UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDA ALLEN,<br><br>                    Plaintiff,<br><br>          v.<br><br>JEANNE WOODFORD; RICHARD RIMMER;<br>ROSANNE CAMPBELL; GWENDOLYN<br>MITCHELL; SAMPATH SURYADEVARA,<br>M.D., JAUN JOSE TUR, M.D.,<br>MUHAMMAD ANWAR, M.D., MADERA<br>COMMUNITY HOSPITAL, A CALIFORNIA<br>CORPORATION.<br><br>                    Defendants. | 1:05-CV-01104-OWW-LJO<br><br>**ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANTS'<br>MOTIONS TO DISMISS** |

## I.   INTRODUCTION

Defendants California Department of Corrections ("CDC"), Madera County Community Hospital ("MCH"), and Dr. Muhammad Anwar ("Anwar"), move to dismiss the complaint under Fed. R. Civ. P. 12(b)(6).  Plaintiff Brenda Allen ("Allen") opposes the motion.

## II.   PROCEDURAL HISTORY

The complaint was filed on August 25, 2005.  (Doc. 1., Complaint.)  CDC moved to dismiss on October 31, 2005.  (Doc. 10, CDC Mot. to Dismiss.)  The first amended complaint ("FAC") was filed on November 9, 2005.  (Doc. 11, FAC.)  CDC moved to dismiss on January 19, 2006.  (Doc. 19, CDC. Mot. to Dismiss.)  MCH and

Anwar moved to dismiss on January 24, 2006. (Doc. 20, MCH Mot. to Dismiss; Doc. 23, Anwar Mot. to Dismiss.) Allen filed her opposition on March 17, 2006. (Doc. 50, Allen's Opp'n. to Mot. to Dismiss ("Allen's Opposition").) CDC filed their reply to Allen's opposition on March 30, 2006. (Doc. 56, Reply to Resp. to Mot. to Dismiss ("CDC Reply").) MCH filed a reply to Allen's opposition on March 31, 2006 . (Doc. 58, Reply to Resp. to Mot re Def. Mot. to Dismiss "MCH's Reply").) Anwar also replied to Allen's opposition on March 31, 2006. (Doc. 59, Reply to Resp. to Mot. By Dr. Anwar ("Anwar's Reply").)

### III.  **BACKGROUND**

Allen, an inmate at the Central California Women's Facility (CCWF), alleges that a surgical procedure performed by Anwar caused severe scarring, disfigurement, and physical injuries. Allen alleges violation of her Eighth and Fourteenth Amendment rights against cruel and unusual punishment. 42 U.S.C. § 1983. On August 25, 2005, Allen filed suit against Anwar, MCH and members of its hospital staff, as well as a number of individual supervisors at the CDC. (Doc. 11, FAC ¶¶ 3-12.) CDC moved to dismiss the FAC for failure to exhaust administrative remedies under 42 U.S.C. §1997e(a). Defendants move to dismiss for failure to state a claim under the Eighth Amendment. All defendants move to dismiss Allen's non-federal claims under Fed. R. Civ. P. 12(b)(6) and for lack of supplemental jurisdiction under 28 U.S.C. §1367(a).

//

### IV.  **FACTUAL HISTORY**

2

### A.   Allen's Medical Condition

While an inmate at CCFW, Allen suffered from boils and infected ingrown hairs in her armpit, upper buttocks, and groin areas (hereinafter "medical condition"). (Doc. 11, FAC ¶ 15.) Allen claims that in 2004 she requested that CDC refer her to a dermatologist. (Id. ¶ 18.)  Dr. Suryadevara and the CDC rejected her request and instead directed her to Anwar for surgical removal of her boils. (Id.)  In July 2004, Allen underwent surgery at MCH, a nonprofit hospital. (Id.)  MCH provided nursing care to Allen as well as the facility for Anwar to treat her during her surgery. (Doc. 21, MCH Mot. to Dismiss.)  Anwar was an independent contractor at MCH. (Id.)  MCH claims that it was Anwar who exercised his medical judgment and made the decision to operate on Allen. (Id.)  MCH did not give Anwar instruction or advice on the surgical procedure. (Id.)

Allen makes several allegations about Anwar's surgical procedure.  First, Allen claims that Anwar performed a similar surgery on a fellow inmate, Regina Boyce ("Boyce"). (Doc. 11, FAC ¶ 16.)  Allen alleges that Boyce consented only to the "lancing" of boils in her armpits but that instead was subjected by Anwar to more invasive surgery. (Id.)  Allen claims that the surgery left Boyce with limited flexibility in her arms, limited ability to raise her arms, and loss of sensation in her arms. (Id. at ¶ 17.)  Allen believes that Boyce filed a claim against Anwar as a result of the surgery. (Id.)

Allen further alleges that she consented to Anwar's surgical removal of her boils because she thought the procedure would be minimally invasive. (Id. ¶ 17.)  Instead, Anwar removed large

sections of skin and tissue, including glands and muscles, from both armpits. (Id.) Anwar did not perform any adequate skin grafts to restore mobility. (Id.) Allen claims that the surgery left her with limited flexibility in her arms, limited ability to raise her arms, and radiating pain. (Id.) She also has severe pain in her groin and upper buttocks areas. (Id.) Allen claims that she did not consent to the procedure Anwar actually performed. (Doc. 50, Allen's Opp'n, P. 24.)

Allen attempted to ask Anwar about the results of her surgery. (Doc. 51-1, Declaration of Margaret McCletchie ("McCletchie Decl.") in Supp. of Brenda Allen's Opp. to Mot. to Dismiss, Ex. A, Section A.) Anwar dismissed her inquiries. (Id.) Anwar has since stopped performing surgeries on CCFW inmates. (Doc. 50, Allen's Opp'n, 10.) After her surgery, Allen filed grievances with the CDC and brought this action against Defendants.

**B. Allen's Administrative Appeals and Federal Claim.**

Allen filed her first 602 complaint[1] at the informal level on August 9, 2004 ("2004 Grievance"). (Doc. 51, McCletchie Decl., ¶ 3.) She requested the following relief:

---

[1] The California prison system allows inmates to file inmate appeal forms (Form CDC 602) appealing any "departmental decision, action, condition, or policy which they can demonstrate as having an adverse affect upon their welfare." CAL. CODE REGS. tit. 15, § 3084.1 (2006). The appeal system has four levels of review: (1) an informal level; (2) a first formal level; (3) a second formal level; and (4) the Director's level review. CAL. CODE REGS. tit. 15, § 3084.5 (2006). If an inmate is not satisfied with the prison's decision about her appeal, she can appeal adverse decisions to the next level of review. A prisoner is required to appeal until all available administrative remedies are exhausted. 42 U.S.C. § 1997e.

1  
2  

       1)     that her medical concerns be met  
       2)     legal advice  
3  
       3)     an explanation from Anwar as to his procedure and  
              his reaction upon her questioning his procedure.  
4  

(Id. ¶ 4.)

5  
     On August 23, 2004 Allen received a response from CDC  
6  
indicating that "the department cannot give [her] legal  
7  
advice...[but that she has] the right to have [her] concerns  
8  
addressed by the physician who performed [her] surgery." (Doc.  
9  
51, McCletchie Decl. at ¶ 5.)  Allen then went to the first  
10  
formal level of review to appeal denial of her request for a  
11  
second opinion[2] and the denial of viewing her medical file. (Id.  
12  
at ¶ 6.)  On September 29, 2004 Allen's requests were "partially  
13  
granted." (Id. at Ex. A, Section E.)  Her medical file was  
14  
reviewed by the Chief Medical Officer.  An appointment was  
15  
scheduled for her to meet with another surgeon a month later.  
16  
(Id.)  Whether she actually met with another surgeon and the  
17  
outcome of that meeting are unclear from the record.

18  
     Allen filed her second 602 complaint on July 25, 2005 ("2005  
19  
Grievance"). (Doc. 51., McCletchie Decl. at ¶ 8.)  In this  
20  
grievance, Allen made the following complaints:

21  
       1)     She was not satisfied with the surgery  
       2)     She was under the impression that the surgery  
22  
              would be minor  
       3)     Her arms were sewn together too tightly so that  
23  
              she is unable to lift them "completely upward"  
       4)     She has lost sensation and mobility in her arms  
24  

25  
     [2] There is some question as to whether Allen requested a  
26  
second opinion in her initial 602 complaint at the informal  
level.  The record shows her appealing a denial of a request for  
27  
a second opinion but there is no evidence indicating that she  
made such a request. (Doc. 51-1, McCletchie Decl., Ex. A,  
28  
Section D.)

5)   Questioned why she was not first referred to a
     dermatologist
6)   Questioned why she was not warned or notified
     about Anwar's previous complaints against him
7)   Questioned why she was not given the option to
     choose her own doctor

(Id. at Ex. B, Section A.)

The relief she sought for this grievance was compensation for pain and suffering, to have a medical review of her file, and to be assigned a log number. (Doc. 51, McCletchie Declaration, Exhibit B, Section B.) On August 25, 2005 while Allen's second 602 was still pending, she filed this lawsuit.

In response to her 2005 Grievance CDC again "partially granted" her request on September 14, 2005. (Doc. 51, McCletchie Decl., Ex. B, Section E.) CDC acknowledged her complaint and granted her the right to review her health record. (Id.) The CDC found her concerns to have "merit" and brought the concerns to the attention of the "appropriate management staff." (Id.) Allen was also given a log number. (Id.) However, the CDC notified Allen that they were unable to compensate her for pain and suffering because the CDC was not authorized to grant monetary compensation. (Id.)

On September 16, 2005, having filed her complaint in federal court, Allen appealed to the second-level of review indicating that she had not received answers to her inquiries. (Doc. 51, McCletchie Decl., Ex. B, Section F.) On October 1, 2005 Allen proceeded to take her appeal to the Director's level and requested an explanation as to why Anwar was still performing surgery. (Id. at Section H.) Allen then filed her first amended complaint on November 9, 2005. After Allen submitted her appeal

6

to the Director's level of review the Chief of Inmate Appeals, N. Grannis, wrote a letter dated December 23, 2005.  (Doc. 51, McCletchie Decl., Ex. C.)  The letter stated that the grievance was being returned to Allen because she first had to go through the second level of review before she could appeal to the Director's level.  (Id. ¶ 12.)  The record does not reflect that there was ever a second level response to her appeal.

## V.   <u>STANDARD OF REVIEW</u>

Fed. R. Civ. P. 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  However, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are disfavored and rarely granted.  The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).

In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party.  *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State*

1

*Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

2

## VI.   ANALYSIS

3

### A.   Legal Background

4

#### 1.   Motion to Dismiss for Failure to Exhaust Administrative Remedies Pursuant to 42 U.S.C. §1997e(a).

5

6

CDC Defendants move to dismiss Allen's FAC pursuant to the

7

Fed. R. Civ. P. 12(b)(6) because Allen failed to exhaust her

8

administrative remedies under 42 U.S.C. §1997e(a).  This section

9

of the Prison Litigation Reform Act ("PLRA") requires prisoners

10

to exhaust available administrative remedies before bringing suit

11

challenging prison conditions under §1983:

12

> "No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any
> other federal law, by a prisoner confined in any jail,

13

> prison, or other correctional facility until such
> administrative remedies as are available are

14

> exhausted."

15

24 U.S.C. § 1997e(a).

16

In the Ninth Circuit, "failure to exhaust nonjudicial

17

remedies that are not jurisdictional is subject to a Rule 12(b)

18

motion rather than a motion for summary judgment." *Wyatt v.*

19

*Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003).  CDC Defendants

20

have properly brought a Rule 12(b)(6) motion.

21

Defendants have the burden to prove the absence of

22

exhaustion.  Fed. R. Civ. P. 8(c)(there is no pleading

23

requirement under 1997e(a)).  Plaintiff is not required to plead

24

and prove exhaustion of administrative remedies.  *Wyatt,* 315 F.3d

25

at 1119.

26

"In ruling on an unenumerated Rule 12(b)(6) motion to

27

dismiss for failure to exhaust, 'the court may look beyond the

28

**8**

pleadings and decide disputed issues of fact' by, for example, considering affidavits submitted by the parties." *Hazleton v. Alameida*, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005)(quoting *Wyatt*, 315 F.3d at 1119-20)).  Generally, on a motion to dismiss, a court may consider two types of "extrinsic" material.  First, "a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations and citations omitted).  A court may even consider materials not physically attached to the complaint if their authenticity is not contested and the complaint necessarily relies on them.  *Id.*  Second, a court may take judicial notice of matters of public record under Fed. R. Evid. 201.  *Id.*  For example, matters of public record may be considered, including pleadings, orders and other papers filed with the court or records of administrative bodies.  *Id.*  Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted.  *See Ove v. Gwinn,* 264 F.3d 817, 821 (9th Cir. 2001).

### 2. 42 U.S.C. §1983.

Allen bases her §1983 claim on an alleged Eighth Amendment violation.  To establish liability under §1983 a plaintiff must show 1) that she has been deprived of a right secured by the United States Constitution or a federal law and 2) that the deprivation was effected "under color of state law." *Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir. 2003).

### a. Violation of the Eighth Amendment.

A violation of the Eighth Amendment is made applicable to the states by the Fourteenth Amendment.  *Whitley v. Albers,* 475 U.S. 312, 317 (1986).  Under §1983, an inmate must show "deliberate indifference to serious medical needs" to maintain an Eighth Amendment claim based on prison medical treatment.  *Jett v. Penner,* 439 F.3d 1091, 1096 (9th Cir. 2006)(*quoting Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).  Plaintiff must show a "serious medical need" by demonstrating that "failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'" and the defendant's response to the need was deliberately indifferent.  *Id.*  This second prong is satisfied by a showing 1) of a purposeful act or failure to respond to a prisoner's pain or possible medical need and 2) harm caused by the indifference.  *Id.*  Indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."  *Id.*  Yet, an "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under §1983.  *Id.*  A prisoner need not show that harm was substantial; however, serious harm provides additional support for an inmate's claim that the defendant was deliberately indifferent to his needs.  *Id.*  If the harm is an "isolated exception" to the defendant's "overall treatment of the prisoner [it] ordinarily militates against a finding of deliberate indifference."  *Id.*

### b.    Under Color of State Law

In *West v. Atkins*, 487 U.S. 42 (1988)*,* the Supreme Court articulated the standard for the "state action" required to

support an Eighth Amendment violation in a prison medical case. The petitioner in *Atkins* tore his left Achilles tendon at a state prison in which he was incarcerated. *Atkins*, 487 U.S. at 43. A physician under contract to provide medical care examined him and directed that he be transferred to an acute - care medical facility operated by the State. *Id.* The only issue before the Court was whether petitioner had established that respondent acted under color of state law in treating West's injury.

The traditional definition of acting under color of state law requires that the defendant in a §1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Atkins*, 487 U.S. at 49 (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)). *Id.* If defendant's conduct satisfies the state action requirement of the Fourteenth Amendment, "that conduct [is] also action under color of state law and will support a suit under §1983." *Id.* In such circumstances, defendant's alleged infringement of plaintiff's federal rights is "fairly attributable to the State." *Id.* To constitute state action, the deprivation must be caused by the exercise of some right or privilege created by the State or by a person for whom the State is responsible, and the party charged with the deprivation must be a person who may fairly be said to be a state actor. *Id.; see also, Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). State employment is generally sufficient to render the defendant a state actor. It is firmly established that a defendant in a §1983 suit acts under color of state law when he abuses the position given to him by the State. *Atkins*,

11

487 U.S. at 49.  Generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.  *Id.*  Here Anwar was a contract physician providing medical services to the prison and to prisoners who needed surgery.

### 3.    Eleventh Amendment Immunity.

The Eleventh Amendment bars suits against a state for damages or injunctive relief, unless the state has consented to or waived immunity, or Congress has validly abrogated the same. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54-55 (1996); *In re Harleston,* 331 F.3d 699, 701 (9th Cir. 2003).  The Eleventh Amendment's "reference to actions against one of the United States encompasses not only actions in which a State is actually named as a defendant, but also certain actions against the state agents and state instrumentalities." *Regents of the Univ. of Calif. v. Doe,* 519 U.S. 425, 429 (1997); *see also Ulaleo v. Paty,* 902 F.2d 1395, 1398 (9th Cir. 1990).

**B.    Summary of Motions For Federal Claims**

**1.    CDC Defendants**

**a.    Motion to Dismiss Pursuant to The Prison Litigation Reform Act §1997e(a).**

CDC moves to dismiss the FAC for failure to exhaust administrative remedies under §1997e(a) of the PLRA.  CDC argues that Allen only appealed her 2004 grievance to the first formal level of review and her 2005 grievance to the second formal level of review.  CDC argues that the PLRA requires Allen to appeal her grievances to the highest level of review before she can bring suit against CDC.

**i.    The Exhaustion Requirement and The
California State Inmate Administrative
Appeals Process.**

The PLRA requires that an inmate exhaust all administrative remedies before bringing suit.  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory.  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002)(citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)).  "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

There are two principal policies behind the administrative exhaustion rule:

> The first is to protect an administrative agency's
> authority by giving the agency the first opportunity to
> resolve a controversy before a court intervenes in the
> dispute.  The second is to promote judicial efficiency
> by either resolving the dispute outside of the courts,
> or by producing a factual record that can aid the court
> in processing a plaintiff's claim.

*Ngo v. Woodford*, 403 F.3d 620, 624 (9th Cir. 2005).

A California state inmate exhausts her administrative remedies within the meaning of the PLRA by pursuing administrative appeal through all appropriate and available levels of review.  *Hazleton*, 358 F. Supp. 2d at 929.  The following four steps are available to California state prisoners:

> 1)    informal resolution
> 2)    formal written appeal on a CDC 602 inmate appeal
>       form
> 3)    second level appeal to the institution head or
>       designee
> 4)    third level appeal to the Director of the
>       California Department of Corrections

*Gomez v. Winslow*, 177 F. Supp. 3d 977, 979 (N.D. Cal. 2001)

(internal citations omitted); *see* Cal. Code Regs., tit. 15 § 3084, *et seq.*  To fulfill the exhaustion requirement, a prisoner must pursue her appeal through all three levels of administrative appellate review (i.e., to the Director's level), unless further appeal would be futile.  *Brady v. Attygala*, 196 F. Supp. 2d 1016, 1020 (C.D. Cal. 2002).

### ii.  Allen Fully Exhausted Her Administrative Remedies.

To overcome CDC's motion to dismiss, Allen must show that she exhausted her administrative remedies under §1997e(a).  It is the possibility of relief that is critical in determining whether a plaintiff fully exhausts her remedies.  *Brady*, 196 F. Supp. 2d at 1020.  Granting the prisoner's appeal could constitute the extent of the relief the prison could offer.  *Id.* at 1021-22. (citing Cal. Code Regs. tit. 15 § 3084.5(d)); *accord Clement v. Cal. Dept. of Corr.*, 220 F. Supp. 2d 1098, 1106 (N.D. Cal. 2002)(holding "Plaintiff had received all the relief that the prison administrative appeal could provide" when prison granted both Second Level Appeals and provided colonoscopy and special diet for inmate).  Pursuit of an administrative appeal is not required when no relief whatsoever is left available for the inmate to obtain through the prison administrative process.  *Id.* at 1020.  *Brady v. Attygala,* 196 F. Supp. 2d 1016, 1020. (C.D. Cal. 2002).

In *Brady v. Attygala,* 196 F. Supp. 2d 1016 (C.D. Cal. 2002), plaintiff was an inmate whose eye was injured by another prisoner.  Id. at 1017.  Prison officials failed to properly treat his injury and ignored his repeated complaints of pain and

loss of vision in his eye.  *Id.* at 1018.  Brady's condition
continued for a month during which time he filed a CDC 602
complaint contesting the treatment he received by prison doctors.
*Id.*  While his appeal was pending at the second level review,
Brady was finally seen by an outside eye specialist who informed
him that his "eye was infected" and "could not be saved."  *Id.*
Brady's appeal was forwarded to the second level review the same
day that he saw the eye specialist.  *Id.*  Prison officials
granted Brady's appeal noting that he had already consulted with
the outside specialist.  *Id.*  The Court reasoned that Brady had
fully exhausted his remedies because he received the action he
sought during the pendency of his grievance.  *Id.* at 1021.  When
Brady's grievance was "granted" at the second level of review
there was little else he could seek or expect from the prison
administrative process; he had won his appeal and had been
granted all the relief he sought in his grievance.  *Id.*  Nowhere
did defendants articulate what other types of relief were still
available from the administrative process for Brady to pursue
after his appeal was granted.  *Id.*  Nor did it appear that any
relief in fact existed.  *Id.*  CDC acknowledges that money damages
are not an available remedy.  (Doc. 51, McCletchie Declaration,
Exhibit B, Section E.)

     As in *Brady*, Allen has exhausted her administrative remedies
upon receiving the relief she sought from CDC.  CDC gave her all
the possible relief they could grant.  In her 2004 grievance,
Allen requested:

     1)    that her medical concerns be met
     2)    that she receive legal advice
     3)    an explanation from Anwar regarding his surgical
           procedure.

In response, the CDC notified Allen that they could not give her legal advice.  The CDC met Allen's medical needs by having medical personnel review her medical file, scheduling an appointment for her to see another surgeon, and allowing her to view her own medical file.  She was also assigned a log number. Upon obtaining this relief, there was little else that Allen could seek or expect from the prison administrative process. Nowhere did the CDC articulate what other types of relief were still available for Allen to pursue.  Nor did it appear that any relief for Allen in fact existed.  The CDC could not provide Allen with the explanations she sought from Anwar.  He is no longer employed by the CDC or CCWF.  They invited her to seek an explanation from him directly but did not offer to assist her in obtaining this explanation.  It was reasonable for Allen to infer that CDC could not provide her any relief with respect to the answers she sought from Anwar.  Also given that Anwar no longer performs surgeries on CCFW inmates, the possibility of this remedy is no longer available as he has no relationship with CDC. Since Allen's only remaining request for relief was money damages, requiring her to appeal to a higher level would not have given her any more relief than she had already obtained. Instead, a further appeal would have potentially "provided the opportunity that the corrective action taken earlier [by the CDC] would later be undone."  *Brady,* 196 F. Supp. 2d at 1022.  Allen made two 602 grievances regarding her surgical procedure before her complaint was filed.  This gave the CDC a full opportunity to consider and investigate her case before she filed suit.  Based on the pleadings, Allen has fully exhausted her administrative

**16**

remedies as there appears to be no remaining relief available through the CDC.

### iii. CDC Failed To Meet Their Burden Under §1997e(a).

CDC defendants argue that remedies were still available for Allen to exhaust.  The PLRA requires that defendants affirmatively meet their burden of raising and proving the absence of exhaustion.  *Wyatt,* 315 F.3d at 1119.  The CDC has failed to meet this burden.  The relief the CDC claims it could have granted Allen includes:

1)   medication and physical therapy for the loss of mobility in her arms.
2)   facilitating a meeting with Anwar
3)   additional care and treatment for her injuries
4)   referral to a plastic surgeon, a dermatologist, a physical therapist, a psychiatrist, or any other of a number of health care providers

(Doc. 56, CDC Reply, 6.)  The CDC argues that it did not lack the authority to provide Allen with further remedies.  Had Allen pursued her complaint to full administrative exhaustion she could have made specific requests that the institution provide her with such remedies.

Allen did not fail to make a request for help with her injuries.  Allen requested in her 2004 grievance that her medical concerns be met in addition to seeking an explanation about the details of Anwar's surgical procedure.  None was forthcoming. Allen also alleges that she had initially requested to see a dermatologist before she was referred to Anwar.

Section 1997e(a) of the PLRA does not require Allen to make specific requests as to the means by which her concerns should be met.  To require Allen to make specific requests for relief that she does not want or does not know is available would shift the

burden of proving the absence of exhaustion to plaintiff rather than the defendant.  Rule 8(a) provides that a complaint must include only a "short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a); *see also, Wyatt,* 315 F.3d at 1118.  In this circuit, Allen is required to do no more.  *See Wyatt,* 315 F.3d at 1118 (Only Congress can change to standard to a requirement of greater specificity).  In addition, the CDC has greater legal expertise and knowledge about available remedies than Allen.  *Id.* at 1119. (stating that prison officials have superior access to prison administrative records in comparison to prisoners, especially when prisoners move from one facility to another).  For these reasons, §1997e(a) of the PLRA creates a burden on defendants to raise and prove the absence of exhaustion.  *Id.*  The CDC has failed to meet this burden.

CDC's motion to dismiss Allen's complaint for failure to exhaust her administrative remedies under the PLRA §1997e(a) is DENIED.

> **b.    CDC Motion to Dismiss For Failure To State A Claim; Eighth Amendment's Subjective Awareness Test of "Deliberate Indifference."**

CDC defendants move to dismiss Allen's §1983 action for failure to state a claim in violation of the Eighth Amendment. Allen claims that CDC knew or should have known Anwar posed a risk to her and were deliberately indifferent to her medical needs.  CDC claims that Allen fails to allege facts showing how medical and nonmedical staff at CDC were deliberately indifferent.  Under the Eighth Amendment, prison officials must ensure that inmates receive adequate food, clothing, shelter, and

medical care, and must take reasonable measures to guarantee the safety of inmates.  *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)(*quoting Hudson v. Palmer,* 468 U.S. 517, 526-527 (1984); *Wilson v. Seiter*, 501 U.S. 294, 283 (1991);  *Estelle,* 429 U.S. at 103; *Willis v. Terhune,* 404 F. Supp. 2d 1226, 1230 (E.D. Cal. 2005).  The CDC asserts that Allen's FAC, at most, states a claim for negligence because Allen fails to show subjective awareness on the part of medical and nonmedical staff.

The deliberate indifference standard involves an objective and a subjective prong.  *Willis,* 404 F. Supp. 2d at 1230.  First, the alleged deprivation must be, in objective terms, "sufficiently serious."  *Id.* (*quoting Farmer,* 511 U.S. at 834).  Second, the prison official must "know of and disregard an excessive risk to inmate health and safety."  *Id.*  Thus a prison official may be liable under the Eighth Amendment only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. *Id.*

The CDC claims that Allen alleges no facts to show their personal participation in her surgery.  By merely alleging that CDC referred her to Anwar for surgery, CDC argues that she has failed to allege the deliberate conduct and subjective awareness required on their part for a showing of deliberate indifference.  CDC cannot be found liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to her health and safety.  Allen would have to allege "deliberate indifference" on behalf of CDC by stating facts that show each defendant, both medical and nonmedical personnel, was subjectively aware of the

**19**

risk Anwar posed to her as a patient.  Allen must allege that the CDC defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and that they drew such an inference.  *Farmer,* 511 U.S. at 837.

Allen argues that both medical and nonmedical personnel subjected her to surgery they knew would cause her physical harm and acted with the intent in harming her.  Anwar performed the same faulty surgical procedure on Boyce, a fellow inmate, prior to performing it on her.  Allen believes that Boyce filed a complaint against Anwar after her surgery and put the CDC on notice of the risk posed by Anwar.  Because CDC knew of the risk and still referred her to Anwar for the surgery, Allen claims they did so with the intent to harm her.

In spite of these allegations, Allen fails to allege how each defendant was subjectively aware of her medical condition and deliberately indifferent to her medical needs.  Allen would have to show that each defendant's actions which caused her deprivation were, objectively, "sufficiently serious."  She would also have to show that each defendant had a "sufficiently culpable state of mind."  While Allen alleges a sufficiently serious medical condition, she fails to show how each CDC defendant had a sufficiently culpable state of mind.

Allen is not required to show CDC officials acted or failed to act believing that harm would actually befall her.  *Farmer*, 511 U.S. at 842.  Section 1983 contains no state of mind requirement independent of that necessary to state a violation of the underlying constitutional right.  *Id.* at 841.  It merely provides a cause of action.  *Id.*  It is enough that CDC officials

**20**

acted or failed to act despite their knowledge of a substantial risk of harm. *Id.* Whether defendants had the requisite knowledge of a substantial risk is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* If Allen presents evidence showing that Anwar posed a substantial risk which was "longstanding, pervasive, well documented, or expressly noted by defendants in the past and the circumstances suggest that defendants... had been exposed to information concerning the risk enough so that they 'must have known' about it, such evidence could be enough to permit a finding of actual knowledge of the risk." *Farmer,* 511 U.S. at 842. Allen also has to allege facts that speak to the specific role that nonmedical personnel had in the decision to refer her to Anwar for treatment of her medical condition.

After such proof, CDC officials may prove that they were unaware even of an obvious risk to health or safety. *Farmer*, 511 U.S. at 844. Defendants charged with "deliberate indifference" can show, for example, that they did not know of the underlying facts which indicated a sufficiently substantial danger or that they knew the underlying facts but believed (albeit unsoundly) that the risk was insubstantial or nonexistent. *Id*. If defendants had actual knowledge of a substantial risk to Allen's health or safety, they may still avoid liability if they responded reasonably to the risk. *Id.* This is true even if the harm ultimately was not averted. *Id.* Whether viewed in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Eighth Amendment.

*Id.* at 845.

Allen's FAC, as alleged, fails to show how medical and nonmedical staff at CDC were "deliberately indifferent" to her serious medical needs.  CDC's motion to dismiss is granted with leave to amend.

### c.   Eleventh Amendment Immunity: Suits Against Prison Officials.

CDC raises the issue of Eleventh Amendment Immunity as an affirmative defense.  Allen's complaint alleges that she sues defendants, some of whom are state officials, in their "official" and "individual" capacity.  The distinction in capacities is critical.

### i.   Official Capacity Suits.

Suits against an official in his official capacity are treated as suits against the entity on whose behalf that official acts.  In such suits, the real party in interest is the entity for which the official works.  *Hafer v. Melo,* 502 U.S. 21, 25 (1991).  A federal action for monetary damages against an individual state official acting in his official capacity is barred by the Eleventh Amendment in the same way that an action against a State is barred.  *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir. 1997).

### ii.   Personal Capacity Suits.

In contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [taken] under color of state law."  *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999)(*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985))(internal quotations omitted).  To establish personal liability in a §1983 or §1985 action, it is enough to show that

the official, "acting under color of state law, caused the deprivation of a federal right." *Hafer,* 502 U.S. at 25 (internal quotations omitted). Public officials sued in their personal capacity may assert personal liability defenses, such as qualified immunity. *Dittman,* 191 F.3d at 1027.

CDC raises the Eleventh Amendment immunity as a defense against Allen's claims. Allen alleges that the acts or omissions of medical and nonmedical personnel at CDC, individually and taken together, were the proximate cause of her injuries. To recover under §1983 against CDC officials acting in their individual capacities, Allen must make an inquiry into causation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). This inquiry must be individualized and focus on the duties and responsibilities of each CDC defendant whose acts or omissions are alleged to have caused the constitutional deprivation. *Id.* Allen must prove some degree of individual culpability by each prison official, including nonmedical prison staff, under the "deliberate indifference" standard. *Id.* She is not required to show proof of an express intent by the individual official to punish. *Id.*

In analyzing the relationship between deliberate indifference and the constitutional deprivation it is important to distinguish the causal connection required when a plaintiff, such as Allen, seeks injunctive or declaratory relief as opposed to damages. *Leer*, 844 F.2d at 633. When a prisoner seeks injunctive or declaratory relief against a myriad of prison personnel responsible for operating a prison, the focus is on whether the *combined acts or omissions* of the state officials

23

created living conditions that violate the Eighth Amendment.  *Id.*
However, when the plaintiff seeks to hold individual defendants
personally liable for damages, the causation inquiry between the
deliberate indifference and the Eighth Amendment deprivation is
more refined.  The focus, instead, is on whether each individual
defendant was in a position to take steps to avert the incident
but failed to do so intentionally or with deliberate
indifference.  *Id.*  In order to resolve this causation issue,
Allen must specifically plead the knowledge, participation, or
deliberate indifference for each named CDC defendant.  Id.

CDC's motion to dismiss claims against individual CDC
officers is GRANTED WITH LEAVE TO AMEND.

**2.   Madera Community Hospital's Motion to Dismiss for
Failure to State a Claim**

**a.   MCH's Liability Under §1983**

MCH moves to dismiss Allen's §1983 action for failure to
state a claim.  MCH argues that Allen's claims are not sufficient
to show the hospital's direct participation in her constitutional
alleged deprivation.

When examining the liability of supervisors, "it is clear
that the supervisors are not subject to vicarious liability, but
are liable only for their own conduct."  *Jeffers v. Gomez,* 267
F.3d 895, 915 (9th Cir. 2001); *Wesley v. Davis,* 333 F. Supp. 2d
888, 892 (C.D. Cal 2004); *Bergquist v. County of Cochise*, 806
F.2d 1364, 1369 (9th Cir. 1986).  In order to establish liability
against a supervisor, a plaintiff must allege facts demonstrating
(1) his or her personal involvement in the constitutional

**24**

deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Jeffers*, 267 F.3d at 915; *Wesley*, 333 F. Supp. 2d at 892.  The sufficient causal connection may be shown by evidence that the supervisor implemented a policy so deficient that the policy itself is a repudiation of constitutional rights.  *Wesley*, 333 F. Supp. 2d at 892 (internal quotations omitted).  However, an individual's general responsibility for supervising the operations of a prison is insufficient to establish personal involvement.  *Id.* (internal quotations omitted).

Supervisor liability under §1983 is a form of direct liability.  *Munoz v. Kolender,* 208 F. Supp. 2d 1125, 1149 (S.D. Cal. 2002).  Under direct liability, Allen must show that MCH breached a duty to her which was the proximate cause of her injury.  *Id.*  The law allows actions against supervisors under §1983 as long as sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right.  The requisite causal connection can be established by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.  *Id.* (*quoting Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978)).

Allen claims that her factual allegations are sufficient to establish a causal connection between MCH and her constitutional

deprivation.  She alleges MCH knew or should have known that Anwar posed a risk to her and other CCWF inmates and were deliberately indifferent to this risk.  MCH furnished Anwar with the facilities to perform his faulty surgery on her and other CCWF inmates although they had knowledge of Anwar's faulty procedure.  MCH also provided surgical and nursing staff in connection with Allen's surgery.  As a result, Allen argues that MCH knew of and personally participated in activities that left her disfigured.

While Allen correctly asserts that MCH was involved in her surgery by providing the facilities and staff to Anwar, her allegations are insufficient to establish a causal connection between MCH and her injuries.  Allen alleges no facts to show MCH had specific knowledge of Anwar's alleged lack of competence or a policy in place that, as implemented, was a cause of her alleged constitutional violation.  Allen alleges no facts to show MCH breached a duty to her and that such a breach was the cause of her injuries.  The FAC also fails to show that MCH set in motion a series of acts they knew would cause Allen a constitutional harm.

//

### b.   Acting Under Color of State Law

Even if Allen sufficiently alleges a causal connection between MCH and her constitutional deprivation, she also has to

**26**

show that MCH was "acting under the color of state law." *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991); *Clement,* 220 F. Supp. 2d at 1104 (citing *Atkins,* 48 U.S. at 48). MCH asserts that Allen fails to allege facts showing state action on the hospital's part. This is incorrect. Allen sufficiently alleges that a contract existed between MCH and Anwar, under which MCH provided Anwar with surgical facilities and staff for Allen's surgery, knowing that Allen was a CCWF inmate. However, Allen fails to allege that a contract or any relationship existed between MCH and Allen, the CDC, or the State of California. Aside from alleging that hospital nursing staff tended to Allen during her 2004 surgery, there are no other facts alleged to establish what relationship existed between MCH and Allen.

To state a §1983 claim, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law. *Henderson v. Simi Valley,* 305 F.3d 1052, 1056 (9th Cir. 2002); *Lopez* 939 F.2d at 883 (*citing Parratt v. Taylor*, 451 U.S. 527, 535(1981)). State action may be sufficiently alleged by a complaint stating that a contract existed between a health care provider and the state. *Lopez*, 939 F.2d at 883. (state action was sufficiently alleged by a complaint stating that the defendant hospital was under contract with the State of Arizona to provide medical services to indigents); *see also West*, 487

U.S. at 54 (A private physician under contract with a state to provide medical services to inmates is a state actor for purposes of §1983).

The issue is whether MCH, based on its alleged involvement, was an agent of the state for Eighth Amendment purposes. Allen alleges that MCH is a nonprofit hospital. Anwar was a physician on staff with full privileges at MCH. Allen does not allege the existence of any contractual relationship between MCH and the CDC or the State of California. Instead, Allen argues, without alleging, that the CDC and the State of California delegated to MCH its duty to provide medical services for Allen. As a result, Allen contends that MCH acted as a state agent in providing such services. This agency argument, however, is a conclusion of law unsupported by factual allegations. A court is not required to accept as true conclusory allegations or unwarranted deductions of fact. *Sprewell,* 266 F.3d 979, 988 (9th Cir. 2001).

"Actions taken by a private individual may be 'under color of state law' where there is significant state involvement in the action." *Franklin v. Fox,* 312 F.3d 423, 444 (9th Cir. 2002); *Johnson v. Knowles,* 113 F.3d 1114, 1118 (9th Cir. 1997)(quoting *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir. 1983). The extent of state involvement in the action is a question of fact. *Lopez,* 939 F.2d at 883. The Supreme Court has articulated four distinct tests for determining when the actions of private

individuals amount to state action: 1) the public function test 2) the joint action test 3) the state compulsion test and 4) the governmental nexus test. *Franklin,* 312 F.3d at 444-445; *Johnson,* 113 F.3d at 1118; *see also Lopez,* 939 F.2d at 883.

Under the public function test, a private party is viewed as a state actor if the plaintiff establishes that, in engaging in the challenged conduct, the private party performed a public function that has been "traditionally the exclusive prerogative of the state." *Johnson,* 113 F.3d at 1118; *see also Blum v. Yaretsky,* 457 U.S. 991, 1005 (1982). Under the joint action test, state action is found where a private person is a "willful participant in joint activity with the State or its agents" that effects a constitutional deprivation. *Johnson,* 113 F.3d at 1119; *see also Howerton,* 708 F.2d at 383. Under the state compulsion test, a private party is fairly characterized as a state actor when the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [challenged conduct] must in law be deemed to be that of the State. *Johnson,* 113 F.3d at 1119; *see also Yaretsky,* 457 U.S. 991, 1005. Lastly, under the governmental nexus test, the issue is whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *Johnson,* 113 F.3d at 1120.

While these factors are helpful in determining the significance of state involvement, "there is no specific formula for defining state action." *McDade v. West,* 223 F.3d 1135, 1139 (9th Cir. 2000); *Howerton,* 708 F.2d at 383.  The extent of state involvement remains a factual inquiry.  "Only by sifting facts and weighing circumstances can the non-obvious involvement of the state in private conduct be attributed its true significance." *Howerton,* 708 F.2d at 383.  Allen has failed to allege any facts to determine the relationship between MCH and the State.

MCH's motion to dismiss is GRANTED WITH LEAVE TO AMEND.

### 3.   Dr. Anwar

#### a.   Anwar's "Deliberate Indifference"

Anwar also moves to dismiss for Allen's failure to state an Eighth Amendment claim.  Anwar claims Allen does not allege facts that show he was deliberately indifferent to her medical needs. Anwar argues that Allen's allegations against him amount to no more than a difference in medical opinion between Allen and Anwar.  He interprets Allen's allegations as stating a case for medical malpractice, a cause of action that is insufficient to state a claim under the Eighth Amendment.

Deliberate indifference may be manifested in two ways: 1) it may appear when prison officials deny, delay, or intentionally interfere with medical treatment or 2) it may be shown in the way physicians provide medical care.  *Estelle*, 429 U.S. at 104;

*McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992); *Kenney v. Paderes,* 217 F. Supp. 2d 1095, 1097 (D. Haw. 2002).  The alleged indifference must rise to the level of "unnecessary and wanton infliction of pain."  *Kenney,* 217 F. Supp. 2d at 1097 (citing *McGuckin,* 974 F.2d at 1059).  In either case, however, the indifference to an inmate's medical needs must be substantial; inadequate treatment due to negligence, inadvertence, or difference in judgment between an inmate and medical personnel does not rise to the level of a constitutional violation.  *Id.* at 1097-1098 (citing *Franklin v. Oregon, State Welfare Div.,* 662 F.2d 1337, 1344 (9th Cir. 1981).

Liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment.  *Jensen v. Lane County,* 312 F.3d 1145, 1147 (9th Cir. 2002) (holding that due process implicitly requires the judgment of a physician be exercised on the basis of substantive and procedural criteria that are not substantially below the standards generally accepted in the medical community.)  To successfully allege "deliberate indifference" the allegations must amount to "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer,* 511 U.S. at 835 (discussing *Estelle,* 429 U.S.

97).  To show deliberate indifference on the part of Anwar, Allen must allege any one of the following: 1) that Anwar's treatment is a far departure from the standard of care that a medical provider owes or 2) that Anwar's conduct was in reckless disregard of standard or accepted medical practice for treatment of her condition or 3) that Anwar's surgery posed such a dangerous or high risk that an intent to injure may be inferred.

Allen alleges that she gave consent to a minimally invasive surgery; that instead, Anwar removed large sections of skin and tissue, including glands and muscles from both her armpits.  She further alleges that Anwar did not perform any adequate skin graft to restore mobility.  After surgery, she claims to have been left with limited flexibility in her arms, limited ability to raise her arms, and that she suffers from radiating pain; that Anwar had knowledge the surgery was inherently dangerous but failed to disclose such information to her.  Allen alleges that Anwar also conducted a similar surgery with similar results to fellow inmate Boyce before he treated Allen.  Prior to treating Allen, Boyce had filed a complaint against Anwar for the outcomes of her surgery.  Accepting all factual allegations as true and viewing them in a light most favorable to the nonmovingmoving party, these allegations are sufficient to charge that Anwar's

surgical procedure deviated from the standard medical practice.[3]

### b.  Anwar's Conduct as "State Action"

Allen further alleges that she and other CCWF inmates received medical treatment from Anwar at MCH for their medical needs.  Allen alleges that Anwar and CDC had a contract whereby Anwar would provide CCWF inmates with surgical treatment.  There is nothing in the record to show that Anwar or the CDC disputes these allegations.

The medical treatment of prison inmates by prison physicians (or a prison contract physician) is state action.  *West*, 487 U.S. at 53-54.  As an inmate at CCWF, Allen must rely on prison authorities to treat [her] medical needs; if the authorities fail to do so, those needs will not be met.  *Id.* at 54.  In light of this, the State has a constitutional obligation, under the Eighth Amendment, to provide adequate medical care to Allen and those it has incarcerated.  *Id.* (explaining this as an inference to be drawn from *Estelle*, 429 U.S. 97).  It is a physician's function within the state system, not the precise terms of the employment, that determines whether the doctor's action can fairly be

---

[3]In determining whether a doctor's conduct was "deliberately indifferent" the Ninth Circuit also inquires whether the physicians neglect of the condition was an "isolated occurrence," or an "isolated exception," to the doctor's overall treatment of the prisoner.  *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990); *Toussaint v. McCarthy,* 801 F.2d 1080, 1111 (9th Cir. 1986).  This inquiry is not necessary for Allen's case as her allegations are sufficient to establish a showing of "deliberate indifference" by Anwar.

attributed to the State.  *West,* 487 U.S. at 55*.*  Whether Anwar is on the state payroll or is paid by contract, the dispositive issue concerns the relationship among the State, the physician, and the prisoner.  *Id.* at 56.  Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights.  *Id.*

Allen sufficiently alleges the relationship between Anwar, CCWF inmates, and the State.  Allen's factual allegations show that Anwar's conduct constituted state action for the purpose of §1983.

Defendant Anwar's motion to dismiss is DENIED.

**C.   Motions As To Non-Federal Claims**

**1.   Supplemental Jurisdiction Under 1367(a)**

Title 28 U.S.C. section 1367(a) provides in pertinent part:

> "In any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

Allen alleges a §1983 claim for Eighth Amendment violations. Allen's state law claims invoke supplemental jurisdiction and arise from the same controversy as her §1983 claim.

//

### 2.   Professional Negligence

MCH moves to dismiss Allen's state law professional negligence claim on the grounds that it is barred by the statute of limitations under Cal. Code Civ. P. §340.5.[4]  MCH claims that under §340.5 the statute of limitations for bringing this cause of action against them was one year, July 18, 2005.  MCH argues that Allen failed bring her claim within the one year statute of limitations.

A prisoner's time to sue a health care provider can be extended during incarceration up to the maximum of three years from the time of injury.  *Belton v. Bowers Ambulance Service*, 20 Cal. 4th 928, 930 (Cal. 1999).  Cal. Code Civ. P. §352.1 applies to actions brought by incarcerated individuals like Allen. Section 352.1(a) provides in relevant part:

> "If a person entitled to bring an action... is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years."

Cal. Code Civ. P. § 352.1; *see also Belton,* 20 Cal. 4th at 930.

---

[4] Cal. Code Civ. P. §340.5 provides in pertinent part:
> "In an action for injury or death against a health care provider based on such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers or through the use of reasonable diligence should have discovered, the injury whichever occurs first."

Allen was in prison when the facts giving rise to her cause of action allegedly occurred.  Section 352.1 tolls the statute for two years while Allen is imprisoned.  Allen's surgery occurred on July 21, 2004.  Allen filed her complaint on August 25, 2005, well within the time limit of §352.1.  Allen's cause of action is not barred by §340.5.

MCH's motion to dismiss Allen's third cause of action for professional negligence on statute of limitations grounds is DENIED.

### 3.   Civil Battery

Each of the defendants brings a motion to dismiss Allen's civil battery claim on the grounds that she fails to sufficiently allege facts that meet the elements of civil battery.  A civil battery claim requires that plaintiff show 1) defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person, 2) plaintiff did not consent to the contact, and 3) the harmful or offensive contact caused injury, damage, loss or harm to the plaintiff.  *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (Cal. Ct. App. 2004)(internal quotations omitted).  A battery is any intentional, unlawful, and harmful contact by one person with the person of another.  *Id.*  A harmful contact, intentionally done is the essence of a battery.  *Id.*  A contact is unlawful if it is unconsented to.  *Id.*

Allen alleges that she signed the hospital consent forms[5] but did not give informed consent to the surgery Anwar actually performed.  Allen alleges that she was giving consent to a surgery she thought was minimally invasive.  She argues that each defendant intentionally failed to disclose the true nature of the surgery.  Had she known that the surgery would involve removal of large sections of skin and tissue, including glands and muscles from both her armpits, she would not have given her consent.  She claims to have been subjected to an entirely different procedure from that to which she consented.

When a physician obtains a patient's consent to a particular treatment and administers that treatment but an undisclosed inherent complication occurs, the patient has a claim for negligence, not battery.  *Piedra*, 123 Cal. App. 4th at 1495-1496.  The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented.  *Id.* at 1496.  When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the

---

[5] Allen signed a form titled "Conditions for Admission to Madera Community Hospital" which includes her consent to medical and surgical procedures and information on the legal relationship between the hospital and physician as arising under an independent contract.  (Doc. 22, Decl. of John Frye in Supp. of Madera Community Hospital's Mot. to Dismiss, Ex. A.)  Allen also signed a form titled "Authorization For and Consent To Surgery or Special Diagnostic or Therapeutic Procedures" which includes the specific surgical procedure performed on Allen.  Id., Ex. B.

37

consent given is present.  *Id.*  However, when the patient

consents to certain treatment and the doctor performs that

treatment but a complication arises, no intentional deviation

from the consent given appears; rather, the doctor in obtaining

consent may have failed to meet his due care duty to disclose

pertinent information.  In that situation the action should be

pleaded in negligence.  *Id.* (*quoting Cobbs v. Grant,* 8 Cal. 3d

229, 240-241(Cal. 1972)).

Allen's factual allegations marginally show the requisite

element of deliberate intent to allege battery.  Allen alleges

the consent to minimally invasive surgery, not the radical

medical procedure Anwar performed.  Whether Allen consented to

Anwar's surgery, but her condition and his intended minimally

invasive surgery resulted in such inherent complications,

requiring more surgery that caused limited flexibility in her

arms, limited ability to raise her arms, and radiating pain

presents a dispute.  Allen does not expressly allege that Anwar

intended to deviate from the consent she gave to her surgery.

Allen also fails to show how MCH or CDC knowingly engaged in any

harmful or offensive contact to her or that they had any

knowledge of the harmful or offensive contact caused to Allen.

Allen consented to the procedure stated on the consent form.

Allen does not allege these defendants intentionally failed to

disclose the nature of the surgery or that they knew the specific

surgery that Anwar would perform.  To allege a sufficient claim for civil battery Allen must plead facts that Anwar performed a surgical procedure different from the one she consented to, rather than one which only included undisclosed inherent complications.

Defendants' motion to dismiss Allen's fourth cause of action for civil battery is GRANTED WITH LEAVE TO AMEND.

### 4.   Gross Negligence

Each defendant moves to dismiss Allen's action for gross negligence on the ground that she fails to allege facts sufficient to maintain a gross negligence claim.  Defendants argue that Allen's complaint alleges no facts to support her gross negligence claim.

Gross negligence is defined as either the "want of even scant care or an extreme departure from the ordinary standard of conduct." *Eastburn v. Reg'l Fire Prot. Auth.,* 31 Cal 4th 1175, 1185-1186 (Cal. 2003); *Wright v. City of Los Angeles,* 219 Cal. App. 3d 318, 343 (Cal. Ct. App. 1990); *see also Colich & Sons v. Pac. Bell*, 198 Cal. App. 3d 1225, 1240 (1988).

Allen argues that the facts as alleged are enough for a claim of gross negligence.  Allen alleges that Anwar performed an unnecessary surgical procedure.  Such procedures resulted in Allen's permanent disfigurement and disability.  Allen is left with limited flexibility in her arms.  Allen has suffered severe

scarring as a result of the surgery.  Allen argues that such allegations are not conclusions of law, but rather facts that sustain a cause for gross negligence.

In order to prevail under a §1983 cause of action, Allen must prove the higher standard of "deliberate indifference" rather than gross negligence.  *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  Here, a gross negligence cause of action is redundant and does not entitle Allen to a different remedy against Anwar from that which she could potentially recover under her §1983 claim.

Defendant's motion to dismiss Allen's fifth cause of action for gross negligence is GRANTED WITH LEAVE TO AMEND.

### 5.   Intentional Misrepresentation

Defendants move to dismiss Allen's claim for intentional misrepresentation arguing that Allen fails to plead this cause of action with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b) requires that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.  *Celado Int'l, Ltd. v. Walt Disney Co.,* 347 F. Supp. 2d 846, 855 (C.D. Cal. 2004); *see also Neubronner v. Milken,* 6 F.3d 666, 671 (9th Cir. 1993)(internal quotations

omitted).  A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. *Neubronner,* 6 F.3d at 671*.*  The complaint must specify such facts as the times, dates, places and other details of the alleged fraudulent activity.  *Id.*  Under California law the elements of intentional misrepresentation, or actual fraud are: 1) misrepresentation (false representation, concealment, or nondisclosure) 2) knowledge of falsity (scienter) 3) intent to defraud (i.e., to induce reliance) 4) justifiable reliance and 5) resulting damage.  *Olson v. Cohen*, 106 Cal. App. 4th 1209, 1216-1217 (Cal. Ct. App. 2003); *see also Anderson v. Deloitte & Touche*, 56 Cal. App. 4th 1468, 1474 (Cal. Ct. App. 1997).

Allen alleges that on July 21, 2004 she sought treatment from CDC defendants for boils.  She claims that CDC personnel misrepresented to her that dermatological care was not appropriate for her condition and that Anwar's surgical procedure was the only treatment option CDC would offer.  Allen also claims that Anwar and MCH, in seeking consent for her surgery, misrepresented to her that the surgery would be minimally invasive.  She alleges that they made this misrepresentation with knowledge that the surgery would actually involve the removal of skin, tissue, and glands.  She further argues that they intended to defraud her so that she would consent to the surgery and that

she relied on their misrepresentation.  Had she known that the

surgery would involve the removal of skin, tissue, and glands,

she would not have consented.  As a result, she alleges that she

has suffered damage from the surgery due to limited mobility and

flexibility in her arms, permanent disfigurement, and chronic

pain and humiliation.  These allegations are sufficient under

Rule 9(b) in identifying the circumstances constituting fraud so

that defendants are able to prepare an adequate answer from the

allegations.  Once intentional fraud is alleged, punitive damages

are an available remedy.

Defendants' motion to dismiss Allen's claim for intentional

misrepresentation is DENIED.

### 6.   Negligent Misrepresentation

Allen brings a claim against all Defendants for negligent

misrepresentation.  Negligent misrepresentation is a separate and

distinct tort of deceit.  *Friedman v. Merck & Co.,* 107 Cal. App.

4th 454, 475 (Cal. Ct. App. 2003).  Where the defendant makes

false statements, honestly believing that they are true, but

without reasonable ground for such belief, he may be liable for

negligent misrepresentation.  *Id.*  The elements of a cause of

action for negligent misrepresentation are:

    1)   defendant's representation is to a past or
         existing material fact
    2)   the representation must have been untrue
    3)   the representation was made without any reasonable
         ground for believing it to be true
    4)   the representation was made with the intent to

**42**

                          induce plaintiff's reliance
      5)       the plaintiff, unaware of the falsity of the
               representation, acted in reliance upon the truth
               of the representation and was justified in this
               reliance
      6)       the plaintiff sustained damages

*Id.* To state a cause of action for negligent misrepresentation

plaintiff must allege facts establishing that defendants owed a

duty to communicate accurate information.  *Id.* California courts

have recognized a duty to communicate accurate information where

providing false information poses a risk of and results in

physical harm to the person.  *Id.*

        Allen sufficiently alleges that Anwar misrepresented facts

that were material to obtaining her consent for surgery.   She

alleges that CDC told her dermatological care was unavailable and

that surgery was the only treatment option for her condition.

She asserts that MCH and Anwar also misrepresented material facts

about the extent and severity of the surgery with the intent to

obtain  her consent.  She also sufficiently alleges that she

relied on Defendants' misrepresentations and consented to their

surgery in reliance on their truth.  However, Allen fails to

assert facts to show CDC and MCH defendants' knowledge of Anwar's

alleged misrepresentations or that they played any role in

causing the misrepresentations to be made.

        Defendant's motion to dismiss Allen's claim for negligent

misrepresentation is GRANTED WITH LEAVE TO AMEND.

              **7.   Emotional Distress Claims**

                              **43**

Allen asserts intentional infliction of emotional distress and negligent infliction of emotional distress.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege 1) extreme and outrageous conduct by the defendant, with the intent or reckless disregard of the probability of causing emotional distress 2) plaintiff suffered severe emotional distress and 3) that defendant was the cause of the emotional distress. *Ess v. Eskaton Properties, Inc.,* 97 Cal. App. 4th 120, 129 (Cal. Ct. App. 2002).

To state a claim for negligent infliction of emotional distress requires that a plaintiff show 1) serious emotional distress, 2) actually and proximately caused by 3) wrongful conduct 4) by a defendant who should have foreseen that the conduct would cause such distress. *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir. 2004). It is well settled that negligent infliction of emotional distress is not an independent tort; rather it is the tort of negligence to which the duty element applies. *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.,* 48 Cal. 3d 583, 588 (Cal. 1989); *Friedman,* 107 Cal. App. 4th at 464;.

Where injury such as mental and emotional distress is caused by the constitutional violation, that injury is compensable under §1983. *Anderson v. Cent. Point Sch. Dist.*, 746 F.2d 505, 508 (9th Cir. 1984); *Carey v. Piphus*, 435 U.S. 247, 263-264 (1978).

Allen's emotional distress claims are properly alleged under her §1983 claim.

Arguendo, if a trier of fact finds Anwar intentionally misrepresented the intended surgery, the intentional distress claims are viable.  The motion to dismiss as to Anwar is DENIED. The allegations are insufficient as to MCH and CDC, as there is no vicarious liability.  MCH and CDC Defendants' motions to dismiss claims for intentional and negligent infliction of emotional distress are GRANTED.

**8.   Motion to Strike Punitive Damages**

**a.   Motion to Strike; Fed. R. Civ. P. 12(f)**

Fed. R. Civ. P. 12(f) provides that "redundant, immaterial, impertinent, or scandalous matters" may be "stricken from any pleading."  Fed. R. Civ. P. 12(f).  "[Only] pleadings are subject to motions to strike."  *See Qarbon.com, Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1048-1049 (N.D. Cal. 2004).  However, a "motion to strike" materials that are not part of the pleadings may be regarded as an "invitation" by the movant "to consider whether [proffered material] may properly be relied upon." *United States v. Crisp*, 190 F.R.D. 546, 551 (E.D. Cal. 1999) (quoting *Monroe v. Bd. of Educ.*, 65 F.R.D. 641, 645 (D. Conn. 1975)).

Motions to strike are disfavored and infrequently granted. *Bassiri v. Xerox Corp.,* 292 F. Supp. 2d 1212, 1220 (C.D. Cal. 2003).  Motions to strike should not be granted unless it is

clear that the matter to be stricken could have no possible

bearing on the subject matter of the litigation. *Id*.

### b.   California Code of Civil Procedure §425.13

California Code of Civil Procedure §425.13 provides in

pertinent part:

> "In any action for damages arising out of the
> professional negligence of a health care provider, no
> claim for punitive damages shall be included in a
> complaint or other pleading unless the court enters an
> order allowing an amended pleading that includes a
> claim for punitive damages to be filed.  The court may
> allow the filing... on the basis... that the plaintiff
> has established that there is a substantial probability
> that the plaintiff will prevail on the claim."

Cal. Code Civ. P. § 425.13.

Defendants Anwar and MCH each move to strike Allen's state

punitive damages claim for failure to satisfy §425.13.

Defendants each point out that Allen has neither requested nor

obtained an order from the court allowing for recovery of

punitive damages nor made a showing of a substantial probability

of prevailing.

Where a state evidentiary rule is intimately bound up with

the rights and obligations being asserted, *Erie R.R. v. Tompkins,*

304 U.S. 64, 78 (1938) mandates the application of the state

rule.  *Wray v. Gregory,* 61 F.3d 1414, 1417 (9th Cir. 1995).

Section 425.13 is so "intimately bound up" with Allen's

substantive state law claims that, under the *Erie* exception, it

applies to bar these claims where there is no compliance to the

**46**

1    rule.

2         Allen argues that §425.13 is a state procedural rule that

3    does not apply in federal court.  She asserts that the Federal

4    Rules of Civil Procedure govern her state law claim for punitive

5    damages rather than §425.13.  This is incorrect.  Allen claims

6    that she is not required under §425.13 to obtain permission from

7    the court when requesting punitive damages for her state law

8    claims against health care providers.

9

10        In support of her position, Allen relies on *Jackson v. East*

11   *Bay Hospital,* 980 F. Supp. 1341 (N.D. Cal. 1997).  In *Jackson,*

12   Plaintiff claimed punitive damages under the Emergency Medical

13   Treatment and Active Labor Act of 1986 (EMTALA) which

14   incorporates state substantive law in determination of damages.

15   980 F. Supp. 1341 at(N.D. Cal. 1997).  The state substantive law

16   for the determination of damages as applied to EMTALA was

17   governed by Cal. Civ. Code §3333.2(a), California's Medical

18   Injury Compensation Reform Act of 1975 (MICRA).  *Id.*  Defendants

19   moved to apply §425.13, a non-MICRA state procedural requirement,

20   to Plaintiff's complaint, thereby striking the punitive damages

21   claim brought under Plaintiff's EMTALA federal cause of action.

22   *Id.* at 1350.  *Jackson* noted that *Erie* problems arose by applying

23   §425.13 to Plaintiff's claims.  *Id.* at 1352.  *Jackson* reasoned

24   §425.13 does not apply to Plaintiff's federal cause of action

25   because it is a state procedural law, rather than substantive

26

27

28

**47**

law.  *Id.* at 1353.  The court also reasoned that §425.13 is not a central feature of the state's medical malpractice scheme under MICRA such that it would render MICRA meaningless.  *Id.* at 1352. The court held that §425.13 was not so "intimately bound" to the state substantive law under MICRA such that it would warrant application to plaintiff's claims.  *Id.*

Allen is not bringing a claim for punitive damages under a federal act such as EMTALA.  Allen's request for punitive damages pertains to her state law professional negligence claims against MCH and Anwar, both health care providers.

The Ninth Circuit has previously addressed the issue of when a state procedural law is "so intimately bound" to the substantive law that it would require application to federal courts.  Where a state procedural law is part of an integrated scheme for managing medical malpractice claims and constitutes a central feature of that scheme, that law is 'intimately bound' with the substantive claim.  *Jackson,* 980 F. Supp. at 1352*; see also Wray*, 61 F.3d at 1417 (applying Nevada rules regarding admissibility of the findings of the required medical screening panel rather than the Federal Rules of Evidence).  To the extent that the state evidentiary rule defines what is sought to be proved – the measure of damages - it may bind the federal court under *Erie* principles.  *D'Orio v West Jersey Health Servs.,* 797 F. Supp. 371, 376 (D.N.J. 1992).  A state's view of the measure

**48**

of damages is inseparable from the substantive right of action.
*Id.*

The legislative intent behind §425.13 shows the rule to be
intimately bound to the state substantive cause of action for
professional negligence.  Section 425.13 applies to any action
for damages arising out of the professional negligence of a
health care provider.  *Cent. Pathology Servs. Clinic, Inc. v.
Superior Court,* 3 Cal. 4th 181, 187 (Cal. 1992).  The allegations
that identify the nature and cause of a plaintiff's injury must
be examined to determine whether each is directly related to the
manner in which professional services were provided.  *Id.* at 192.
The intent of the Legislature is that any claim for punitive
damages in an action against a health care provider is subject to
the statute if the injury that is the basis for the claim was
caused by conduct directly related to the rendition of
professional services.  *Id.*

Allen's cause of action for professional negligence is
directly related to the manner in which MCH and Anwar provided
their professional services.  Her claim alleges a lack of
informed consent which speaks to manner in which Anwar and MCH
performed and communicated the risks and outcome of her surgery.
This communication is a matter that is an ordinary and usual part
of the medical professional services and therefore governed by
§425.13.  She complains that the medical services were improper

**49**

and harmful.  Her claim is wholly based on the medical services provided by Anwar at MCH under the auspices of CDC.

The legislative intent underlying §425.13 is to screen and assure the bona fides and merits of a claim against a health care provider before a case can be filed.  This inquiry cannot be done without inquiring into the substantive law of the cause of action, the nature and extent of the medical services, and the underlying injuries.  In all respect, §425.13 is so "intimately bound up" with the substantive law of Allen's underlying claim that it must be applied by federal courts when addressing the issue of punitive damages.  Allen must petition the court for punitive damages pursuant to §425.13 for such relief under her state law claims.

Motions to strike Allen's claim for punitive damages are GRANTED WITH LEAVE TO AMEND.

## VII.   CONCLUSION

**A.   SUMMARY OF MOTIONS**

**1.   Federal Claims**

i.   CDC's motion to dismiss for failure to exhaust administrative remedies pursuant to Title 42 U.S.C. 1997e(a) is **DENIED.**

ii.   CDC's motion to dismiss for failure to state a claim under §1983 is **GRANTED WITH LEAVE TO AMEND.**

iii.   MCH's motion to dismiss for failure to state a claim under §1983 is **GRANTED WITH LEAVE TO AMEND.**

                    iv.             Dr. Anwar's motion to Dismiss for failure to state a claim under §1983 is **DENIED**.

     **2.**   **Non-FederalFederal Claims**

                    i.              MCH's motion to dismiss Allen's claim for professional negligence is **DENIED**.

                    ii.             Defendants' motions to dismiss Allen's claim for civil battery is **GRANTED WITH LEAVE TO AMEND**.

                    iii.           Defendants' motion to dismiss Allen's claim for gross negligence is **GRANTED WITH LEAVE TO AMEND**.

                    iv.             Defendants' motions to dismiss Allen's claim for intentional misrepresentation is **DENIED**.

                    v.              Defendants' motions to dismiss Allen's claim for negligent misrepresentation is **GRANTED**.

                    vi.            Anwar's motion to dismiss Allen's claims for intentional and negligent infliction of emotional distress is **DENIED**.

                    vii              MCH and CDC Defendants' motions to dismiss Allen's claims for intentional and negligent infliction of emotional distress is **GRANTED**.

                    viii.         Defendants' Dr. Anwar and MCH Motion to strike Allen's state law claim for punitive damages is **GRANTED WITH LEAVE TO AMEND**.

Any amended Complaint shall be filed within twenty days.

51

**SO ORDERED.**

Dated: <u>June 26, 2006</u>

/s/ OLIVER W. WANGER
**OLIVER W. WANGER**
**United States District Judge**