1

2

3

4                    UNITED STATES DISTRICT COURT

5                   EASTERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7   BRENDA ALLEN,<br><br>8                 Plaintiff,<br><br>9        v.<br><br>10  JEANNE WOODFORD; RICHARD<br>11  RIMMER; ROSANNE CAMPBELL;<br>    GWENDOLYN MITCHELL; SAMPATH<br>    SURYADEVARA, M.D.; JUAN JOSE<br>12  TUR, M.D.; MUHAMMAD ANWAR,<br>    M.D.; MADERA COMMUNITY<br>13  HOSPITAL, a California<br>14  Corporation,<br><br>15                Defendants. | 1:05-CV-01104-OWW-LJO<br>1:05-CV-01282-OWW-WMW<br><br><br>MEMORANDUM DECISION AND ORDER<br>GRANTING IN PART DENYING IN<br>PART DEFENDANTS' MOTIONS TO<br>DISMISS |
| 16  GENEA SCOTT, REGINA BOYCE, AND<br>    JULIE HOLMES<br>17<br>                  Plaintiffs,<br>18<br>         v.<br>19<br>    RODERICK HICKMAN; FRENCHIE<br>20  SELLF; JEANNE WOODFORD;<br>    RICHARD RIMMER; ROSANNE<br>21  CAMPBELL; PETER SZEKRENYI;<br>    DEBRA JACQUEZ; GWENDOLYN<br>    MITCHELL; SAMPATH SURYADEVARA,<br>22  M.D., JUAN JOSE TUR, M.D.;<br>    SHELLY KRUS, M.D.; MUHAMMAD<br>23  ANWAR, M.D.; SUSAN HOGELUND,<br>    R.N.; and MADERA COMMUNITY<br>24  HOSPITAL, a California<br>    Corporation,<br>25<br>                  Defendants. | |

26

27

28

                              1

1

## 1.   **INTRODUCTION**

2      Plaintiffs were at all relevant times or continue to be
3  inmates incarcerated at the Central California Women's Facility
4  ("CCWF") in Chowchilla, California, a facility of the CDC.   The
5  two lawsuits allege that Defendants are collectively responsible,
6  either in their official or individual capacities, for faulty
7  surgical procedures performed on each of them by Defendant
8  Muhammad Anwar, M.D. ("Anwar").   The purpose of the procedures
9  was to treat infected ingrown hair and boils throughout
10  Plaintiffs' bodies ("the medical condition").   Plaintiffs allege
11  that Anwar's treatment was invasive and wholly unnecessary,
12  resulting in severe scarring, disfigurement, and physical
13  injuries.   As a result, Plaintiffs bring federal claims under 42
14  U.S.C. § 1983, the Eighth Amendment, and the Fourteenth Amendment
15  against all Defendants.   Plaintiffs also assert various state
16  causes of action against the individual Defendants.

17      Anwar moves to dismiss all Plaintiffs' claims of Battery,
18  Gross Negligence, Negligent Infliction of Emotional Distress, and
19  their request for Attorneys' Fees.   In the *Allen* motion, Anwar
20  also moves to dismiss Allen's claim for Negligent
21  Misrepresentation.

22      CDC Defendants move to dismiss all Plaintiffs' claims for
23  Gross Negligence and assert the defense of qualified immunity.
24  In the *Scott et al.* action, CDC Defendants also argue that the
25  *Scott et al.* Plaintiffs have failed to exhaust their
26  administrative remedies.   Lastly, in the *Allen* action, CDC
27  defendants argue that Allen has failed to state a federal claim.
28      Lastly, Defendant Madera moves to dismiss Plaintiffs' claim

for gross negligence.

On separate motions the court has consolidated both cases for the purposes of trial.

## 2.   PROCEDURAL BACKGROUND

### A.   *SCOTT,* et al. v. *HICKMAN*, et al., 1:05-CV-01282-OWW-WMW

Plaintiffs filed their second amended complaint on July 17, 2006. (Doc. 17, Second Amended Complaint ("SAC").)  On August 17, 2006, Defendant Madera filed a motion to dismiss. (Doc. 23, Madera Motion to Dismiss.)  On August 18, 2006 both the CDC Defendants and Defendant Anwar each filed motions to dismiss. (Doc. 29, Hickman et. al Motion to Dismiss; Doc. 31, Anwar Motion to Dismiss.)  On September 15, 2006 Plaintiffs' opposed the motions. (Doc. 35, Plaintiffs' Opposition to all Defendants Motion to Dismiss.)  On September 25, 2006 all Defendants filed their reply briefs to Plaintiffs' opposition. (Doc. 40, Hickman et. al Reply to Opposition to Motion to Dismiss, Filed September 25, 2006.; Doc. 42, Madera's Reply to Plaintiffs' Opposition to Motion to Dismiss, Filed September 25, 2006; Doc. 43, Anwar's Reply to Plaintiffs' Opposition to Motion to Dismiss, Filed September 25, 2006.)

### B.   *ALLEN v. WOODFORD*, et al., 1:05-CV-01104-OWW-LJO

Plaintiff Allen filed her second amended complaint on July 17, 2006. (Doc. 82, Second Amended Complaint.)  On August 17, 2006 Defendant Madera filed a motion to dismiss. (Doc. 87, Madera Motion to Dismiss.)  On August 18, 2006 both the CDC Defendants and Defendant Anwar each filed motions to dismiss. (Doc. 89, WOODFORD, et. al Motion to Dismiss; Doc. 92, Anwar's Motion to Dismiss, Filed August 18, 2006.)  On September 15, 2006

**3**

1  Allen opposed the motions.  (Doc. 95, Allen's Consolidated

2  Opposition to All Defendants' Motion to Dismiss.)  On September

3  25, 2006 Defendants filed their replies to Allen's opposition.

4  (Doc. 101, Madera's Reply to Opposition to Motion to Dismiss;

5  Doc. 102, Anwar's Reply to Opposition to Motion to Dismiss; Doc.

6  105, Woodford et. al's Reply to Opposition to Motion to Dismiss.)

7                    **3.  FACTUAL BACKGROUND**

8       Plaintiffs allege that each of them suffered from the same

9  medical condition of infected ingrown hairs or boils in their

10  armpits while inmates at CCWF.  (Doc. 82, Allen SAC, ¶ 15; Doc.

11  17, Scott, et al. SAC, ¶ 22.)  Allen also suffered from the same

12  problem in her groin and upper buttocks.  (Doc. 82, Allen SAC, ¶

13  15.)

14       Plaintiffs allege that on or around 1996 through the events

15  alleged in the complaint, Anwar, and his medical group,

16  negotiated a series of contracts between the CDC Defendants and

17  Anwar under which the California Department of Corrections agreed

18  to pay Anwar certain fees for surgeries Anwar performed on the

19  CDC inmates.  (Doc. 82, Allen SAC, ¶ 16)  According to

20  Plaintiffs, these contracts provided a specific fee that Anwar

21  can charge for listed treatments.  (*Id.*)  However, where the

22  contract does not set a specific billing rate for a listed

23  procedure, the contract guarantees Anwar a minimum reimbursement

24  of 80% for whatever he invoices the CDC Defendants.  (*Id.*)

25  Plaintiffs allege that the contract gave Anwar a financial

26  incentive to deliberately and repeatedly act against the medical

27  interests of CDC inmates, because rather than providing the least

28  invasive and/or medically accepted treatments for common medical

**4**

conditions such as boils, Anwar routinely performed complex,
invasive, and wholly unnecessary surgical procedures to enhance
payment for these procedures. (*Id.*) Some of these procedures
included abcessectomies, laprospopic surgeries, and portocath
insertions none of which were coded in his contract with the CDC
resulting in, increased fees to the CDC Defendants. (*Id.*)
Plaintiffs allege that the surgeries Anwar performed were not
necessary, caused permanent physical and emotional injuries to
patients, and were performed to collect exorbitant fees from the
State regardless of their disastrous effects on CCWF inmates.
(*Id.*)

Plaintiffs also claim that for a significant period of time
prior to Plaintiffs' treatment by Anwar, the CDC Defendants were
aware of Anwar's misconduct and the substantial risk of harm
associated with his treatment of CDC inmates. (Allen SAC, ¶ 17)
Plaintiffs allege that Anwar's misconduct was documented and
expressly noted in written complaints filed by CDC inmates to the
CDC Defendants and in internal communications between CDC
Defendants. (*Id.*) Based on these complaints, the CDC Defendants
investigated Anwar. (*Id.*) As a result of their investigation,
the CDC Defendants learned that Anwar routinely prescribed and
performed unneeded surgical treatments on CCWF inmates, with
devastating consequences. (*Id.*) The CDC Defendants also learned
that Anwar obtained faulty consent from CCWF inmates. (*Id.*)
Anwar told them only that he would "lance" their boils, which he
described as posing only minor risks, but intended to conduct far
more serious and invasive surgeries for personal profit. (*Id.*)
The CDC Defendants also learned that the procedures Anwar

**5**

performed were not covered by the set fees under Anwar's contract with the CDC, allowing Anwar to charge exorbitant fees to treat relatively minor ailments with unnecessary, complex, and/or experimental medical procedures.  (*Id.*)  Plaintiffs allege that despite this knowledge, and in conscious disregard of inmates' health and safety, the CDC Defendants continued to refer patients to Anwar and continued to pay Anwar to perform these unnecessary and invasive surgeries.  (*Id.*)

Plaintiffs also allege that Madera and its staff were notified that Anwar was prescribing and performing uneeded surgical treatments with devastating consequences on CCWF inmates.  (Doc. 17, Scott, et al. SAC, ¶ 25)  Despite this knowledge, and in conscious disregard of Plaintiff's rights, Madera continued to grant Anwar access to its facilities and support staff.  (*Id.*)

Plaintiffs are informed and believe that Madera and the CDC Defendants were on notice of these constitutional violations as early as 2002.  (*Id.*, ¶ 26.)

### 4.  **STANDARD OF REVIEW**

Fed. R. Civ. P. 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  However, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are disfavored and rarely granted.  The question before the court is not whether the plaintiff will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint should not be dismissed unless it appears

**6**

beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).

In deciding whether to grant a motion to dismiss, the court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## 5.  DISCUSSION

### A.  Scott Has Failed to Exhaust Her Administrative Remedies Against Defendants Campbell, Hickman, Jacquez, Mitchell Rimmer, Suryadevara, Farber-Szekrenyi, and Woodford.

CDC Defendants move to dismiss Scott's claims against Defendants Campbell, Hickman, Jacquez, Mitchell, Rimmer, Suryadevara, Farber-Szekrenyi, and Woodford (collectively "Non-Medical CDC Defendants") on the grounds that she failed to exhaust her administrative remedies against them under 42 U.S.C. §1997e(a). This section of the Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust available administrative remedies before bringing suit challenging prison conditions under §1983:

> "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

**7**

24 U.S.C. § 1997e(a).

In the Ninth Circuit, "failure to exhaust nonjudicial remedies that are not jurisdictional is subject to a Rule 12(b) motion rather than a motion for summary judgment." *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). CDC Defendants have properly brought a Rule 12(b)(6) motion. The issue is whether Plaintiff Scott's failure to include the non medical CDC Defendants in her 602 complaint will result in the complete dismissal of her claims.

Defendants have the burden to prove the absence of exhaustion. Fed. R. Civ. P. 8(c)(there is no pleading requirement under 1997e(a)). Plaintiff is not required to plead and prove exhaustion of administrative remedies as it is not an affirmative defense. *Wyatt,* 315 F.3d at 1119.

"In ruling on an unenumerated Rule 12(b)(6) motion to dismiss for failure to exhaust, 'the court may look beyond the pleadings and decide disputed issues of fact' by, for example, considering affidavits submitted by the parties." *Hazleton v. Alameida*, 358 F. Supp. 2d 926, 928 (C.D. Cal. 2005)(quoting *Wyatt*, 315 F.3d at 1119-20)). Generally, on a motion to dismiss, a court may consider two types of "extrinsic" material. First, "a court may consider material which is properly submitted as part of the complaint on a motion to dismiss without converting the motion to dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations and citations omitted). A court may even consider materials not physically attached to the complaint if their authenticity is not contested and the complaint necessarily

**8**

1 relies on them. *Id.* Second, a court may take judicial notice of

2 matters of public record under Fed. R. Evid. 201. *Id.* For

3 example, matters of public record may be considered, including

4 pleadings, orders and other papers filed with the court or

5 records of administrative bodies. *Id.* Conclusions of law,

6 conclusory allegations, unreasonable inferences, or unwarranted

7 deductions of fact need not be accepted. *See Ove v. Gwinn,* 264

8 F.3d 817, 821 (9th Cir. 2001).

9      CDC Defendants argue that Scott's entire action should be

10 dismissed pursuant to the complete exhaustion rule.[1]  CDC

11 Defendants argue that the Ninth Circuit has recently adopted the

12 complete exhaustion rule in *Vaden v. Summerhill*, *449 F.3d 1047*

13 *(9th Cir. 2006)*.[2]  This is an unacceptable contention not

14 justified by existing law.  Fed. R. Civ. P. 11.  In *Vaden*,

15 Plaintiff prison inmate submitted an administrative grievance

16 form ("CDC 602 complaint") alleging misconduct by Defendants

17 Gower, Chapman, and St. Andre, who were all prison employees.

18

19      [1] The complete exhaustion rule stands for the proposition
that under the PLRA a prisoner-litigant's failure to exhaust all
20 administrative remedies as to all claims subjects his claim to
dismissal.  *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000).
21 This rule was expressly rejected in the Ninth Circuit in *Lira v.
Herrera*, 427 F.3d 1164 (9th 2005).
22

23      [2] Defendants cite *Van Strum v. Lawn*, *940 F.2d 406, 409 (9th
Cir. 1991)* and *Terrell v. Brewer*, *935 F.2d 1015, 1018-1019 (9th
24 Cir. 1990)* that deal with prisoner *Bivens* actions in support of
their argument for the complete exhaustion rule.  These cases do
25 not apply as they fail to discuss the PLRA or its 1997(e)
provision.  Defendants also cite to a litany of cases outside the
26 Ninth Circuit that are inapplicable and non binding on the court.
The case of *Lira v. Herrera*, 427 F.3d 1164 (9th Cir. 2005) is
27 more appropriate as it provides a specific analysis of the PLRA's
1997(e) requirement.
28

**9**

1   *Vaden,* 449 F.3d at 1049.  While his grievance was still pending,

2   Plaintiff filed a complaint in district court against Defendants

3   Chapman, Gower, St. Andre, but also included Defendants Duncan

4   and Summerhill in his complaint.  *Id.*  It was the district

5   court's understanding, based on the agreement by Defendants, that

6   Plaintiff included Defendants Duncan and Summerhill in his

7   initial 602 grievance.  *Id.* n.3.  However, the Ninth Circuit

8   reviewed the record and found that Plaintiff did not include

9   either Defendant Duncan or Summerhill in his 602 grievance and

10  named them for the first time in his complaint.  *Id.* n.1-n.3.

11  The court in *Vaden* stated that "If, in fact, Vaden sought relief

12  within the prison grievance system only as to Defendants Gower,

13  St. Andre, and Chapman, then it would appear that he failed to

14  exhaust his remedies against Summerhill and Duncan, regardless of

15  the outcome of this appeal." *Id.* n. 3.  The Ninth Circuit,

16  however, refused to resolve that factual question in *Vaden* and

17  instead dismissed the action on the grounds that Plaintiff filed

18  his suit in federal court while his 602 complaint against Gower,

19  Chapman, and St. Andre was still pending.  *Id.* at 1051.  *Vaden*

20  does not indicate that the Ninth Circuit has adopted the complete

21  exhaustion rule.  It did say, that under the facts of the case,

22  Plaintiff had no exhausted and dismissed the case without

23  prejudice.

24       The Ninth Circuit has already expressly rejected the

25  complete exhaustion rule in *Lira v. Herrera, 427 F.3d 1164 (9th*

26  *Cir. 2005.)*  The issue in *Lira* was whether a suit must be

27  dismissed when there is presuit exhaustion of one or more of the

28  claims contained in the complaint or whether a different

**10**

procedure is available to assure that only exhausted claims go forward. *Id.* at 1170-1171. The Defendants in *Lira* made the same argument as the non medical CDC Defendants in this case, that the PLRA requires dismissal without prejudice of cases in which there are "mixed" complaints, no matter the consequences for the prisoner's ability to pursue already exhausted claims. *Id.* at 1171. The Ninth Circuit disagreed with this argument. *Id.* Through a statutory construction argument, the court reasoned that in three respects the 1997e(c) provision of the PLRA indicates that the district courts need not dismiss an entire action because there is an unexhausted claim:

1.   In 1997e(c), Congress ordered dismissal of certain defective suits and claims – those that are frivolous, malicious, fail to state a claim upon which relief can be granted, or seek monetary relief from a defendant who is immune from such relief, but did not specify that mixed actions must be dismissed. *Id.* at 1171-1172. According to the court, this omission suggests that no special rule regarding the treatment of non viable causes of a action was intended. *Id.* at 1172.

2.   The reference to dismissal of a "claim" in § 1997(e)(c)(2) if there has been a failure to exhaust, juxtaposed to the reference to dismissal of an "action" in § 1997e(c)(1), indicates that claims that have not been exhausted can be treated independently for dismissal purposes from the action as a whole. *Id.* There would be little point in providing for the dismissal of some non exhausted claims on the merits if the remainder of the action would then have to be dismissed, although exhausted, because of the failure to exhaust dismissed claims.

3.   Interpreting the word "action" in § 1997(e)(a) and (c)(1) to indicate that an exhaustion defect in any claim infects the suit as a whole would render subsection (c)(2) superfluous. *Id.* If § 1997e(a) demands a total exhaustion dismissal rule because it uses the word "action," then § 1997e(c)(1), because it uses the word "action," must also require dismissal of the entire case if any claim is "frivolous, malicious, fails to state a claim

upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." *Id.* Yet, § 1997e(c)(1) must apply only when all the claims meet the statutory standard for summary dismissal on the merits, not when only some of them do. *Id.* Otherwise, § 1997e(c)(2), contemplating the dismissal of individual frivolous "claims," would be unnecessary. *Id.* The inclusion of a single frivolous claim would contaminate the entire action, mandating dismissal under § 1997e(c)(1). *Id.*

Ultimately, the court in *Lira* found that the use of the term "action" elsewhere in the statute does not support interpreting § 1997e(a) as dictating a total exhaustion-dismissal rule. *Id.* at 1173. To the contrary, while "action" in the PLRA refers to the case as a whole, the statute consistently uses the term in a manner that contemplates dismissing the entire action only if the entire action fails to meet statutory standards. *Id.* When some claims are valid and others are not, the usual procedural norm - that when a complaint has both good and bad claims, only the bad claims are "dismissed," prevails. *Id.*

### i.   Scott's Administrative Complaints and Appeals

Scott filed three 602 appeals that related to her surgeries for treatment of the boil under her left arm. (See Declaration of James Amis, ¶ 4 and Exhibits A-D attached thereto.)

Scott's first appeal was on June 8, 2005, when she submitted her first grievance (Log No. CWF-C-05-00704) and described her problem as not healing properly after the first surgery by Dr. Anwar. On or about July 28, 2005, Dr. Wilson, Acting Chief Medical Officer granted her appeal in that he stated Scott had her second surgery on July 6, 2005, that all issues pertaining to both surgeries had been addressed, and that she was prescribed

pain medication since June 13, 2005.  This appeal was not pursued to the second and/or third levels of review. (See Declaration of James Amis, ¶ 4(A) and Exhibit B attached thereto.)

Scott made her second appeal on July 11, 2005, when she submitted a second grievance (Log No. X-05-00791) and described her problem as being a diabetic who often gets boils, that she was seen by Dr. Cruz (sic) who scheduled her for the February 14, 2005 surgery after unsuccessful treatment with oral medication. She further stated in the second grievance that she filed the first grievance against Dr. Cruz (sic) and Dr. Anwar and that her 602 was granted for a second surgery to remove the boil.  She also stated that Dr. Cruz (sic) scheduled her for the second surgery on July 6, 2005, with Dr. Anwar and that after the surgery she had 21 staples, a drainage tube, and no feeling in her left arm from back down to elbow and is in pain, that she has been on seven different antibiotics since December 2004 and has had two unsuccessful surgeries and the boil (lump) under her left arm pit remains unaltered.  Scott requested in her appeal that she receive therapy for her left arm, pain management control and the boil removed by Dr. Parvez (sic), financial compensation for pain and suffering, and to be classified as medically disabled. (See Declaration of James Amis, ¶ 4(B) and Exhibit C attached thereto.)  On August 29, 2005, the first formal level of review was partially granted by Dr. Suryadevara on her second appeal in that she was scheduled for physical therapy, that Dr. Pervais performed the requested surgery on August 22, 2005, and that she has received medication for pain management.  She was advised that financial compensation cannot be granted by the medical

1 department, and was also advised that Dr. Anwar was no longer

2 performing surgery on patients at CCWF. (See Declaration of James

3 Amis, ¶ 4(B) and Exhibit C attached thereto.)  On or about

4 September 1, 2005, Scott appealed to the second formal level of

5 review stating that due to the incomptin (sic) of the contract

6 doctor employed by CCWF, she has been in extreme pain, that CCWF

7 has tried to accommodate her with pain management, but failed to

8 address other issues in her 602.  On or about September 20, 2005,

9 the second grievance was partially granted at the second formal

10 level of review by S. Brewer and Dr. Sampath Suryadevara, Chief

11 Medical Officer/Health Care Manager who interviewed Scott.  The

12 problem was described as Scott having three surgeries for an

13 abscess between her left breast and left auxiliary and that she

14 felt Dr. Anwar was negligent in performing two unsuccessful

15 surgeries and that she is requesting therapy for her left arm,

16 pain management, boil removal, financial compensation and to be

17 medically unassigned.

18     The response stated that she was seen by the physical

19 therapist on September 8 and 15, 2005, and was recommended for

20 six weeks of therapy, she has received pain management post

21 operatively, and an accommodation chrono was written limiting her

22 physical activity.  She was advised that she cannot be

23 financially compensated and was also advised that Dr. Anwar was

24 no longer working with CCWF. (See Declaration of James Amis, ¶

25 4(B) and Exhibit C attached thereto.)  On or about October 5,

26 2005, (complaint filed 10/11/05) the Inmate Appeals Branch

27 received Scott's appeal at the third level of review (Director's

28 Level).  The Director's Level Appeal Decision dated January 3,

**14**

1   2006, denied the appeal at the final level of review.

2   Scott made her third appeal on July 20, 2005 when she filed
3   a Reasonable Modification or Accommodation Request (ADA) wherein
4   she requested to be classified as "medically disabled" describing
5   her problem as having a second surgery on her boil that was
6   unsuccessful and she was left with numbness and constant pain.
7   On or about August 31, 2005, the appeal was granted by D. Bravo,
8   CCII.  Mr. Bravo interviewed Scott and she explained to him that
9   she was requesting that she be removed from her current
10  assignment due to a medical condition because she had numbness in
11  her left hand and could not be a participant in the classroom.
12  The response also stated that her central file was reviewed and
13  revealed that a CDC Form 7410 dated August 16, 2005, reflected
14  that no lifting, pushing, or pulling with her left arm.  Also, a
15  comprehensive accommodation chrono stated she was unable to wear
16  a bra due to a recent surgery.  Scott's case was reviewed and a
17  medical committee elected to remove her from her current
18  assignment as requested.  This appeal was not pursued to the
19  second and/or third levels of review. (See Declaration of James
20  Amis, ¶ 4(C) and Exhibit D attached thereto.)

21  In this case plaintiff Scott has pled claims that are non
22  administratively exhausted as to non medical CDC Defendants.
23  None of the defendants are mentioned by name or description in
24  any administrative appeal filed by plaintiff.  Here, the Second
25  Amended Complaint contains allegations of wrongful conduct
26  against Roseanne Campbell, Roderick Hickman, Debra Jacquez,
27  Gwendolyn Mitchell, Richard Rimmer, Sampath Suryadevara, M.D.,
28  Peter Farber-Szekrenyi, and Jeanne Woodford.  Nevertheless,

**15**

plaintiff made no grievance or other administrative charge against any of them before filing suit.  Plaintiff's only grievance was against CDC defendant Dr. Kruse and Dr. Anwar. Plaintiff cannot exhaust her administrative remedies against Dr. Kruse, and then proceed with suit against the non medical CDC Defendants Roseanne Campbell, Roderick Hickman, Debra Jacquez, Gwendolyn Mitchell, Richard Rimmer, Sampath Suryadevara, M.D., Peter Farber-Szekrenyi, and Jeanne Woodford.

The non medical CDC Defendants had no notice that Plaintiff was making claims against them for violation of her civil rights until suit was filed.  CDC Defendsants' motion to dismiss non medical CDC Defendants from Plaintiff Scott's action is **GRANTED WITH LEAVE TO AMEND.**

**B.   Plaintiffs Have Sufficiently Alleged a Claim Under 42. U.S.C. § 1983 Against Non Medical CDC Defendants.**

Under the Eighth Amendment, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)(*quoting Hudson v. Palmer,* 468 U.S. 517, 526-527 (1984); *Wilson v. Seiter*, 501 U.S. 294, 283 (1991);  *Estelle,* 429 U.S. at 103; *Willis v. Terhune,* 404 F. Supp. 2d 1226, 1230 (E.D. Cal. 2005).  The CDC asserts that Allen's FAC, at most, states a claim for negligence because Allen fails to show subjective awareness on the part of medical and nonmedical staff.

The deliberate indifference standard involves an objective and a subjective prong.  *Willis,* 404 F. Supp. 2d at 1230.  First, the alleged deprivation must be, in objective terms,

**16**

"sufficiently serious." *Id.* (*quoting Farmer,* 511 U.S. at 834).
Second, the prison official must "know of and disregard an
excessive risk to inmate health and safety." *Id.*  Thus a prison
official may be liable under the Eighth Amendment only if he
knows that inmates face a substantial risk of harm and disregards
that risk by failing to take reasonable measures to abate it.
*Id.*

The CDC claims that neither Allen nor Scott allege facts to
show non medical CDC Defendants personally participated in their
surgery.  CDC argues that they have each failed to allege the
deliberate conduct and subjective awareness required by non
medical CDC defendants for a showing of deliberate indifference.
Non medical CDC Defendants cannot be found liable under the
Eighth Amendment unless they knew of and disregarded an excessive
risk to her health and safety.  Plaintiffs would have to allege
"deliberate indifference" on behalf of Non medical CDC Defendants
by stating facts that show each defendant was subjectively aware
of the risk Anwar posed to her as a patient.  Plaintiffs must
allege that the non medical CDC Defendants were both aware of
facts from which the inference could be drawn that a substantial
risk of serious harm exists, and that they drew such an
inference.  *Farmer,* 511 U.S. at 837.

Plaintiffs are not required to show that non medical CDC
defendants acted or failed to act believing that harm would
actually befall them.  *Farmer*, 511 U.S. at 842.  Section 1983
contains no state of mind requirement independent of that
necessary to state a violation of the underlying constitutional
right.  *Id.* at 841.  It merely provides a cause of action.  *Id.*

**17**

It is enough that non medical CDC defendants acted or failed to act despite their knowledge of a substantial risk of harm. *Id.* Whether defendants had the requisite knowledge of a substantial risk is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* If Plaintiffs present evidence showing that Anwar posed a substantial risk which was "longstanding, pervasive, well documented, or expressly noted by defendants in the past and the circumstances suggest that defendants... had been exposed to information concerning the risk enough so that they 'must have known' about it, such evidence could be enough to permit a finding of actual knowledge of the risk." *Farmer,* 511 U.S. at 842.  Plaintiffs also have to allege facts that speak to the specific role that non medical CDC Defendants had in the decision to refer her to Anwar for treatment of her medical condition.

After such proof, non medical CDC Defendants may prove that they were unaware even of an obvious risk to health or safety. *Farmer*, 511 U.S. at 844.  Defendants charged with "deliberate indifference" can show, for example, that they did not know of the underlying facts which indicated a sufficiently substantial danger or that they knew the underlying facts but believed (albeit unsoundly) that the risk was insubstantial or nonexistent. *Id.* If defendants had actual knowledge of a substantial risk to Plaintiff's health or safety, they may still avoid liability if they responded reasonably to the risk. *Id.* This is true even if the harm ultimately was not averted. *Id.* Whether viewed in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under

**18**

the Eighth Amendment.  *Id.* at 845.

###    i.    **Non Medical CDC Defendants Assertion of Qualified Immunity**

CDC raises the issue of Eleventh Amendment Immunity as an affirmative defense.  Plaintiffs' complaints sue non medical CDC defendants in their official and individual capacities.  The distinction in capacities is critical.

Suits against an official in his or her official capacity are treated as suits against the entity on whose behalf that official acts.  In such suits, the real party in interest is the entity for which the official works.  *Hafer v. Melo,* 502 U.S. 21, 25 (1991).  A federal action for monetary damages against an individual state official acting in his official capacity is barred by the Eleventh Amendment in the same way that an action against a State is barred.  *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir. 1997).

In contrast, "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions [taken] under color of state law." *Dittman v. California*, 191 F.3d 1020, 1027 (9th Cir. 1999)(*citing Kentucky v. Graham*, 473 U.S. 159, 165 (1985))(internal quotations omitted).  To establish personal liability in a §1983 or §1985 action, it is enough to show that the official, "acting under color of state law, caused the deprivation of a federal right." *Hafer,* 502 U.S. at 25 (internal quotations omitted).  Public officials sued in their personal capacity may assert personal liability defenses, such as qualified immunity.  *Dittman,* 191 F.3d at 1027.

To recover under §1983 against non medical CDC officials

**19**

acting in their individual capacities, Plaintiffs must make an inquiry into causation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).  This inquiry must be individualized and focus on the duties and responsibilities of each non medical CDC defendant whose acts or omissions are alleged to have caused the constitutional deprivation.  *Id.*  Plaintiffs must prove some degree of individual culpability by non medical CDC defendant under the "deliberate indifference" standard.  *Id.*  Plaintiffs are not required to show an express intent by the individual official to punish.  *Id.*

When the Plaintiffs seek to hold individual defendants personally liable for damages, the causation inquiry focuses on whether each individual defendant was in a position to take steps to avert the incident but failed to do so intentionally or with deliberate indifference.  *Leer*, 844 F.2d at 633.  In order to resolve this causation issue, Plaintiffs must specifically plead the knowledge, participation, or deliberate indifference for each named CDC defendant.  Id.

> **ii.   Allen and Scott Have Identical Allegations Against Non Medical CDC Defendants Woodford, Rimmer, Campbell, Mitchell, and Suryadevara**

> **a.   Allegations Against Woodford**

Both Allen and Scott allege the following against Woodford as Director of the CDC:

1.   That Woodford had authority to review and cancel Anwar's contract with the CDC

2.   That Woodford was responsible for Plaintiffs' health and well being

3.   That Woodford had knowledge of Anwar's faulty surgical procedure

1

2

3

    4.    That Woodford conducted an investigation into
           Anwar's surgical procedure

    5.    That despite this knowledge and investigation,
           Woodford continued to allow CDC Defendants to
           refer CCWF inmates to Anwar

4

5

6

    6.    That Woodford had deliberate indifference to
           Plaintiffs' medical needs as evidenced by her
           unwillingness to cancel Anwar's contract and
           continuing to allow Anwar to operate on CCWF
           inmates

7

8

9

10

    7.    That Woodford continued to allow the operations
           even after she received Boyce's 602 appeal, after
           the CDC initiated an investigation into Anwar's
           mistreatment, and after the CDC confirmed that
           Anwar was performing needless surgeries for his
           own financial gain

11  (Doc. 82, Allen SAC, ¶ 33)

12                 **b.   Allegations Against Rimmer**

13     Both Allen and Scott allege the following against Rimmer as

14  Acting Director of the CDC:

15

16

    1.    That Rimmer had authority to review and cancel
           Anwar's contract with the CDC

17

    2.    That Rimmer was responsible for Plaintiffs' health
           and well being

18

19

    3.    That Rimmer had knowledge of Anwar's faulty
           surgical procedure

20

    4.    That Rimmer conducted an investigation into
           Anwar's surgical procedure

21

22

    5.    That despite this knowledge and investigation,
           Rimmer continued to allow CDC Defendants to refer
           CCWF inmates to Anwar

23

24

25

    6.    That Rimmer had deliberate indifference to
           Plaintiffs' medical needs as evidenced by her
           unwillingness to cancel Anwar's contract and
           continuing to allow Anwar to operate on CCWF
           inmates

26  (Doc. 82, Allen SAC, ¶ 34)

27                **c.   Allegations Against Campbell**

28     Both Allen and Scott allege the following against Campbell

as Deputy Director of Health Services:

    1.    That Campbell had authority to review and cancel Anwar's contract with the CDC

    2.    That Campbell was responsible for Plaintiffs' health and well being

    3.    That Campbell had knowledge of Anwar's faulty surgical procedure

    4.    That Campbell conducted an investigation into Anwar's surgical procedure

    5.    That despite this knowledge and investigation, Campbell continued to allow CDC Defendants to refer CCWF inmates to Anwar

    6.    That Campbell had deliberate indifference to Plaintiffs' medical needs as evidenced by her unwillingness to cancel Anwar's contract and continuing to allow Anwar to operate on CCWF inmates

(Doc. 82, Allen SAC, ¶ 35)

### d.   Allegations Against Mitchell

Both Allen and Scott allege the following against Mitchell as the Warden of CCWF:

    1.    That Mitchell's decided or acquiesced to continue to authorize patient referrals to Anwar and his medical group

    2.    That Mitchell signed individual patient authorizations for treatment by Anwar, demonstrating a deliberate indifference to Plaintiff's rights.

    3.    That Mitchell received Boyce's 602 appeal describing Anwar's conduct and lack of consent

    4.    That Mitchell knew about the CDC initiating an investigation against Anwar due to his mistreatment of prisoners

    5.    That Mitchell knew the CDC confirmed Anwar did, in fact, mistreat CCWF prisoners by performing needless surgeries for his own financial gain.

    6.    That Mitchell knew these surgeries resulted in wonton disfigurement of multiple inmates

1
2

       7.     That despite this knowledge, Mitchell continued
            inmate referrals to Defendant Anwar and his
            medical group.  inmates

3

(Doc. 82, Allen SAC, ¶ 36)

4

            **e.   Allegations Against Suryadevara**

5
6

     Scott alleges the following against Suryadevara as the Chief
Medical Officer of CCWF:

7
8
9

       1.     That Suryadevara continued to refer patients to
            Anwar and his medical group despite his personal
            review of patients, including Boyce, Allen, Wyatt,
            Holmes, and Scott, and their records following
            botched treatments by Anwar.

10

       2.     That Suryadevara received Boyce's 602 appeal

11
12

       3.     That Suryadevara knew of the CDC's investigation
            into Anwar's mistreatment

13
14

       4.     That Suryadevara knew CDC's conclusion that Anwar
            was performing needless surgeries for his own
            financial gain

15

       5.     That Suryadevara continued to refer CCWF inmates
            to Anwar despite knowledge of these facts

16

(Doc. 82, Allen SAC, ¶ 37.)

17
18

            **iii. Scott Also Alleges Federal Claims Against Hickman,
                  Jacquez, Suryadevara, and Farber-Szekrenyi**

19

            **a.   Allegations Against Hickman**

20

     Scott alleges the following against Hickman as the Secretary
of the CDC:

21
22

       1.     That Hickman had authority to review and cancel
            Anwar's contract with the CDC

23
24

       2.     That Hickman was responsible for Plaintiffs'
            health and well being

25

       3.     That Hickman had knowledge of Anwar's faulty
            surgical procedure

26
27

       4.     That Hickman conducted an investigation into
            Anwar's surgical procedure

28

       5.     That despite this knowledge and investigation,
            Hickman continued to allow CDC Defendants to refer

CCWF inmates to Anwar

6.   That Hickman had deliberate indifference to
     Plaintiffs' medical needs as evidenced by her
     unwillingness to cancel Anwar's contract and
     continuing to allow Anwar to operate on CCWF
     inmates

7.   That Hickman continued to allow the operations
     even after she received Boyce's 602 appeal, after
     the CDC initiated an investigation into Anwar's
     mistreatment, and after the CDC confirmed that
     Anwar was performing needless surgeries for his
     own financial gain

(Doc. 17, Scott et al. SAC, ¶ 43.)

### b.   Allegations Against Jacquez

Scott alleges the following against Jacquez as acting Warden
of the CCWF:

1.   That Jacquez had authority to review and cancel
     Anwar's contract with the CDC

2.   That Jacquez was responsible for Plaintiffs'
     health and well being

3.   That Jacquez had knowledge of Anwar's faulty
     surgical procedure

4.   That despite this knowledge and investigation,
     Jacquez continued to allow CDC Defendants to refer
     CCWF inmates to Anwar

5.   That Jacquez continued to allow the operations
     even after she received Boyce's 602 appeal and in
     spite of Anwar's history of performing disfiguring
     surgeries on CCWF inmates.

(Doc. 17, Scott et al. SAC, ¶ 10.)

### e.   Allegations Against Farber-Szekrenyi

Scott alleges the following against Farber-Szekrenyi as
Director of Correctional Health Care Services of the CDC:

1.   That Farber-Szekrenyi had authority to review and
     cancel Anwar's contract with the CDC

2.   That Farber-Szekrenyi was responsible for
     Plaintiffs' health and well being

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    3.    That Farber-Szekrenyi had knowledge of Anwar's faulty surgical procedure

    4.    That despite this knowledge and investigation, Farber-Szekrenyi continued to allow CDC Defendants to refer CCWF inmates to Anwar

    5.    That Farber-Szekrenyi continued to allow the operations even after she received Boyce's 602 appeal and in spite of Anwar's history of performing disfiguring surgeries on CCWF inmates.

(Doc. 17, Scott et al. SAC, ¶ 48.)

### iv.   Analysis Of Allegations Against Defendants in their Official Capacities

Based on these allegations, Plaintiffs sufficiently allege a claim that non medical CDC Defendants knew the CCWF inmates faced a substantial known risk of harm to Plaintiffs at the hands of Defendant Anwar and disregarded that risk by failing to take reasonable measures to abate it. *Willis,* 404 F. Supp. 2d at 1230. (quoting *Farmer*, 511 U.S. at 834.)  Plaintiffs allege that non medical CDC Defendants were all responsible for Plaintiffs health, and well being, and specific medical needs, that they had knowledge of the various complaints against Anwar, that they had knowledge of the investigation that resulted from the complaints and that they had knowledge that Anwar's surgeries resulted in the disfigurement of CCWF inmates.  Plaintiffs argue as to each defendant that despite this knowledge Defendants referred or continue to allow inmates to be referred to Anwar.  Further, in an accompanying motion to consolidate the cases, Plaintiffs requested and the court granted judicial notice of a letter dated November 18, 2005 from Chrisman Swanberg, Senior Staff Counsel for the CDC to Michael Ball, Counsel for Dr. Anwar.  The CDC letter to Defendant Anwar, that the court has taken judicial

notice of lists nine inmates who lodged formal complaints against Anwar.  This is evidence showing knowledge that Anwar posed a substantial risk which was "longstanding, pervasive, well documented, or expressly noted by defendants in the past and the circumstances suggest that Defendants... had been exposed to information concerning the risk enough so that they 'must have known' about it."  *Farmer,* 511 U.S. at 844.

In response to Plaintiffs' allegations, non medical CDC Defendants argue that Plaintiffs do not allege non medical CDC defendants personally participated in her medical care or that they personally participated in any of the acts, omissions, or incidents giving rise to Plaintiffs' complaints.  However, allegations of personal participation are not required to state a cause of action under § 1983.  It is enough that non medical CDC defendants acted or failed to act to prevent medical services which were necessary or deficient with knowledge of a substantial risk of harm in the face of known medical needs.  *Farmer,* 511 U.S. at 842.

Defendants also argue that there are no allegations that non medical CDC defendants had the medical expertise necessary to have knowingly subjected Plaintiffs' to a substantial risk of serious harm.  Defendants argue that Plaintiffs' allegations, at most, claim that non medical CDC defendants had a general knowledge about Anwar's faulty procedure and that this general knowledge is insufficient to allege a federal claim.  However, Plaintiffs are not required to show that non medical CDC defendants acted or failed to act believing that harm would actually befall them.  *Farmer*, 511 U.S. at 842.  As alleged,

**26**

Plaintiffs' complaints against non CDC Defendants sufficiently alleges that Plaintiffs must have known that Anwar posed a substantial risk and that his risk was longstanding, pervasive, well documented, or expressly noted by non medical CDC Defendants.

The descriptions against the non medical CDC Defendants were sufficient to show that they knew of the underlying facts which indicated a sufficiently substantial danger or that they knew the underlying facts but unreasonably believed, in reckless disregard of known facts, that the risk was insubstantial or non existent.

CDC Defendants' motion to dismiss non medical CDC Defendants for Plaintiffs' failure to state a federal claim is **DENIED**.

### v.   Analysis of Defendants' Defense of Qualified Immunity

Qualified immunity shields governmental officials performing discretionary functions from civil trial and liability if their conduct violates no "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald* 457 U.S. 800, 818 (1982).  The doctrine of qualified immunity recognizes that "where an official's duties legitimately require action in which clearly established rights are implicated, the public interest may be better served by action taken with independence and without fear of the consequences." *Siegert v. Gilley* 500 U.S. 226, 231-33 (1991).  The Supreme Court has stressed the importance of resolving questions of immunity early in the case because qualified immunity is not a mere defense. *Harlow v. Fitzgerald*, *supra* 457 U.S. at 818.  In a Federal Civil Rights Action under

**27**

Section 1983, a government official acting pursuant to discretionary duties is entitled to qualified immunity from civil liability for damages when the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*.  To determine qualified immunity, the court must determine if, at the times of the alleged occurrence, the official could have believed their behavior was lawful. *Osolinski v. Kane* 92 F.3d 934, 937 (9th Cir. 1996).

The only argument Defendants offer to support their claim for qualified immunity is that it would not be clear to a reasonable government official, who lacked medical expertise, that failing to preclude a doctor from performing surgeries based on allegations that the doctor was performing faulty and unnecessary surgeries would violate the Eighth Amendment. However, the issue of qualified immunity is a fact intensive inquiry.  The need for reasonable medical care to redress known medical needs is law known to prison officials responsible for providing such needs.  Whether failing to act to prevent delivery of unnecessary or deficient medical care in the face of known risks, raises issues not reasonable as a matter of law for the qualified immunity defense.  Under the liberal rule 8 pleading standards for a 12(b)(6) motion, Plaintiffs' allegations are sufficient to withstand Defendants' argument for qualified immunity.

CDC Defendants' motion to dismiss non medical CDC Defendants on qualified immunity grounds is **DENIED.**

28

**D.   State Law Claims and Supplemental Jurisdiction**

Title 28 U.S.C. section 1367(a) provides in pertinent part:

> "In any civil action of which the district courts have
> original jurisdiction, the district courts shall have
> supplemental jurisdiction over all other claims that
> are so related to the claims in the action within such
> original jurisdiction that they form part of the same
> case or controversy under Article III of the United
> States Constitution."

Plaintiffs allege 42 U.S.C. § 1983 claim for Eighth Amendment violations.  Plaintiffs' state law claims invoke supplemental jurisdiction and arise from the same controversy as their 42 U.S.C. § 1983 claim.

### i.   Allen's Negligent Misrepresentation Claim Against Anwar

Allen's claim for Negligent Misrepresentation in her first amended complaint was granted with leave to amend.  Allen again brought a claim against Anwar in her second amended complaint for negligent misrepresentation.  Negligent misrepresentation is a separate and distinct tort of deceit.  *Friedman v. Merck & Co.,* 107 Cal. App. 4th 454, 475 (Cal. Ct. App. 2003).  The tort of fraud or deceit must comply with the particularity requirements of Fed. R. Civ. P. 9(b).[3]  *U.S. Concord, Inc v. Harris Graphics Corp.,* 757 F.Supp. 1053, 1056 (9th Cir. 1991).  To meet the rule's requirements, plaintiff must allege the time, place, and contents of the alleged fraud.  Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent

---

[3] Rule 9(b) provides: In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

misrepresentation.  *Friedman,* 107 Cal. App. at 475.  The elements

of a cause of action for negligent misrepresentation are:

    1)    defendant's representation is to a past or
             existing material fact

    2)    the representation must have been untrue

    3)    the representation was made without any reasonable
             ground for believing it to be true

    4)    the representation was made with the intent to
             induce plaintiff's reliance

    5)    the plaintiff, unaware of the falsity of the
             representation, acted in reliance upon the truth
             of the representation and was justified in this
             reliance

    6)    the plaintiff sustained damages

*Id.*  To state a cause of action for negligent misrepresentation

plaintiff must allege facts establishing that defendants owed a

duty to communicate accurate information.  *Id.*  California courts

have recognized a duty to communicate accurate information where

providing false information poses a risk of and results in

physical harm to the person.  *Id.*

    Allen has not facially pled a negligent misrepresentation

claim against Anwar under Rule 9(b).  Allen specifically alleges

that "immediately prior to the July 21, 2004 surgery Anwar

misrepresented to Allen that the surgery he would perform was an

appropriate treatment option.  (Doc. 82, Allen SAC, ¶ 64.)  This

alleges an intentional deceit inconsistent with negligence.

Allen's claims throughout her second amended complaint that Anwar

led Allen to believe his surgical treatment was an appropriate

option when instead the treatment was dangerous and wholly

unnecessary.  Allen also alleges that "in seeking [her] consent,

Anwar... misrepresented to [her] that the surgery only consisted

of lancing of boils without any reasonable grounds to believe

this was true." (*Id.*, ¶ 71.).  No negligent conduct is

described.

Defendants' motions to dismiss Allen's seventh cause of

action for negligent misrepresentation is **GRANTED**.

### ii.   Plaintiffs' Gross Negligence Claims Against Defendants

A number of California cases define the term "gross

negligence" as "the want of even scant care or an extreme

departure from the ordinary standard of conduct." *See, e.g. Franz

v. Board of Medical Quality Assurance*, 31 Cal.3d 124, 138, 181

Cal.Rptr. 732, 738 (1982); *DeVito v. State of California*, 202

Cal.App.3d 264, 272, 248 Cal.Rptr. 330, 335 (1988), both quoting

*Gore v. Board of Medical Quality Assurance,* 110 Cal.App.3d 184,

196, 167 Cal.Rptr. 881, 887 (1980).  The cases, however,

interpret the meaning of the term "gross negligence" when

utilized in the text of a statute and not in the terms of a

common law right of action in gross negligence. *See also

Continental Ins. Co. v. American Protection Industries*, 197

Cal.App.3d 322, 329, 242 Cal.Rptr. 784, 788 (1987) (stating that

numerous California cases have discussed gross negligence, but

the holdings were based upon interpretation of a statute

referencing "gross negligence").

In *Continental*, at issue was whether there was a recognized

cause of action for "gross negligence."  *Id.* at 325, 242

Cal.Rptr. at 786.  The *Continental* court found that no cause of

action existed and that the trial court properly denied

plaintiff's motion to amend its complaint to add a cause of

**31**

1  action for "gross negligence."  The court stated, "[I]n light of
2  the adoption of the doctrine of comparative negligence in
3  California, any attempt to categorize gross negligence separately
4  from ordinary negligence is unnecessary." *Id.* at 330, 242
5  Cal.Rptr. at 789.

6      Plaintiffs voluntary concede in their opposition brief to
7  dismiss their fifth cause of action for gross negligence.

8      Defendants motion to dismiss Plaintiffs' gross negligence
9  claim is **GRANTED WITH PREJUDICE.**

10          **iii. Civil Battery**

11      A civil battery claim requires that plaintiff show 1)
12  defendant intentionally did an act which resulted in a harmful or
13  offensive contact with the plaintiff's person, 2) plaintiff did
14  not consent to the contact, and 3) the harmful or offensive
15  contact caused injury, damage, loss or harm to the plaintiff.
16  *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1495 (Cal. Ct. App.
17  2004)(internal quotations omitted).  A battery is any
18  intentional, unlawful, and harmful contact by one person with the
19  person of another.  *Id.*  A harmful contact, intentionally done is
20  the essence of a battery.  *Id.*  A contact is unlawful if it is
21  unconsented to.  *Id.*

22      When a physician obtains a patient's consent to a particular
23  treatment and administers that treatment but an undisclosed
24  inherent complication occurs, the patient has a claim for
25  negligence, not battery.  *Piedra*, 123 Cal. App. 4th at 1495-1496.
26  The battery theory should be reserved for those circumstances
27  when a doctor performs an operation to which the patient has not
28  consented.  *Id.* at 1496.  When the patient gives permission to

**32**

1  perform one type of treatment and the doctor performs another,

2  the requisite element of deliberate intent to deviate from the

3  consent given is present.  *Id.*  However, when the patient

4  consents to certain treatment and the doctor performs that

5  treatment but a complication arises, no intentional deviation

6  from the consent given appears; rather, the doctor in obtaining

7  consent may have failed to meet his due care duty to disclose

8  pertinent information.  In that situation the action should be

9  pleaded in negligence.  *Id.* (*quoting Cobbs v. Grant,* 8 Cal. 3d

10  229, 240-241(Cal. 1972))

11                    **a.   Plaintiffs' Battery Claims Against Anwar**[4]

12       In their respective complaints, Plaintiffs allege that Anwar

13  performed a dangerous and wholly unnecessary surgery on them

14  without accurately explaining to her the procedure he intended to

15  perform.  (Doc. 82, Allen SAC, ¶ 57; Doc. 17, Scott et al. SAC, ¶

16  74.)  Plaintiffs claim that Anwar referred to the procedure as a

17  simple "lancing" of boils with little or no danger.  (*Id.*)  Allen

18  alleges that Anwar never received Allen's consent for the actual

19  surgery he intended to, and did, perform.  (*Id.*)  Allen proceeds

20  to argue that by subjecting her to the surgical treatment Anwar

21  committed or caused to be committed a civil battery in the form

22  of harmful contact to which Allen did not consent.  (*Id.*)  As

23  alleged, Allen claims that she gave her permission for Anwar to

24  perform the minimally invasive "lancing" of boils but instead was

25  subjected to an entirely different, more invasive surgical

26

27

28       [4] The language for the claim of civil battery against Anwar
      is identical in both complaints.

                                  **33**

treatment.   These allegations are sufficient to claim that Anwar
deviated from the consent given and performed an operation on
Allen that Allen did not consent to.

Anwar's motion to dismiss Allen's fourth cause of action for
civil battery is **DENIED.**

### iv. Plaintiffs' Negligent Infliction of Emotional Distress Claims Against Anwar

To state a claim for negligent infliction of emotional
distress requires that a plaintiff show 1) serious emotional
distress, 2) actually and proximately caused by 3) wrongful
conduct 4) by a defendant who should have foreseen that the
conduct would cause such distress.  *Austin v. Terhune*, 367 F.3d
1167, 1172 (9th Cir. 2004).   It is well settled that negligent
infliction of emotional distress is not an independent tort;
rather it is the tort of negligence to which the duty element
applies.  *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.,*
48 Cal. 3d 583, 588 (Cal. 1989); *Friedman,* 107 Cal. App. 4th at
464.

Where injury such as mental and emotional distress is caused
by the constitutional violation, that injury is compensable under
§1983.  *Anderson v. Cent. Point Sch. Dist.*, 746 F.2d 505, 508
(9th Cir. 1984); *Carey v. Piphus*, 435 U.S. 247, 263-264 (1978).
Plaintiffs's emotional distress claims are properly alleged under
their §1983 claim.  Plaintiffs' agreed to dismiss this claim at
the hearing at the December 11, 2006 hearing held on this matter.

Anwar's motion to dismiss Plaintiffs' ninth cause of action
for negligent infliction of emotional distress is **GRANTED.**

**34**

1        **v.   Anwar's Motion to Strike Attorney's Fees**

2        Fed. R. Civ. P. 12(f) provides that "redundant, immaterial,

3  impertinent, or scandalous matters" may be "stricken from any

4  pleading."  Fed. R. Civ. P. 12(f).  "[Only] pleadings are subject

5  to motions to strike."  *See Qarbon.com, Inc. v. eHelp Corp.,* 315

6  F. Supp. 2d 1046, 1048-1049 (N.D. Cal. 2004).  However, a "motion

7  to strike" materials that are not part of the pleadings may be

8  regarded as an "invitation" by the movant "to consider whether

9  [proffered material] may properly be relied upon." *United States*

10 *v. Crisp*, 190 F.R.D. 546, 551 (E.D. Cal. 1999) (quoting *Monroe v.*

11 *Bd. of Educ.*, 65 F.R.D. 641, 645 (D. Conn. 1975)).

12       Motions to strike are disfavored and infrequently granted.

13 *Bassiri v. Xerox Corp.,* 292 F. Supp. 2d 1212, 1220 (C.D. Cal.

14 2003).  Motions to strike should not be granted unless it is

15 clear that the matter to be stricken could have no possible

16 bearing on the subject matter of the litigation.  *Id*.

17       Successful plaintiffs in civil rights suit may seek

18 attorney's fees from the losing defendant.  *Pony* v. *County of*

19 *L.A.*, 433 F.3d 1138, 1143 (9th Cir. 2006).  Under 42 U.S.C. §

20 1988(b), "in any action or proceeding to enforce a provision of

21 42 U.S.C. § 1983 the court, in its discretion, may allow the

22 prevailing party a reasonable attorney's fee as part of the

23 cost."  *Id.*

24       Anwar moves to strike Plaintiffs' claim for attorney's fees

25 under Plaintiffs' state causes of action arguing that there are

26 no statutes which support the award under state law.  Defendants

27 request that the court strike attorneys fees for Plaintiffs'

28 claims of civil battery, gross negligence, intentional

**35**

misrepresentation, negligent misrepresentation, and intentional infliction of emotional distress.

Plaintiffs on the other hand argue that attorneys fees for their state law claims are supported by Cal. Code. Civ. Proc. § 1021.5 which provides:

> "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:
> (a)   a significant benefit, whether pecuniary or non pecuniary, has been conferred on the general public or a large class of persons
> (b)   the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and
> (c)   such fees should not in the interest of justice be paid out of recovery if any"

It remains to be seen whether § 1021.5 attorneys fees can be proved.  The claim cannot be eliminated as a matter of law.

Anwar's motion to strike Plaintiffs' attorneys fees for their state law claims is **DENIED.**

## 6.   CONCLUSION

- CDC Defendsants' motion to dismiss non medical CDC Defendants from Plaintiff Scott's action is **GRANTED WITH LEAVE TO AMEND.**

- CDC Defendants' motion to dismiss non medical CDC Defendants for Plaintiffs' failure to state a federal claim is **DENIED.**

- CDC Defendants' motion to dismiss on qualified immunity grounds is **DENIED.**

- Defendants motion to dismiss Plaintiffs' gross negligence claim is **GRANTED.**

- Defendant's motions to dismiss Allen's seventh cause of action for negligent misrepresentation is **DENIED.**

- Anwar's motion to dismiss Allen's fourth cause of action for civil battery is **DENIED.**

- Anwar's motion to dismiss Plaintiffs' ninth cause of action for negligent inflliction of emotional distress is **GRANTED.**

- Anwar's motion to strike Plaintiffs' attorneys fees for their state law claims is **DENIED.**

IT IS SO ORDERED.

**Dated:   December 19, 2006**          **/s/ Oliver W. Wanger**
dd0l0                                          UNITED STATES DISTRICT JUDGE